JOANOS, Judge.
The employer and carrier in this workers’ compensation cause appeal a final order in which the deputy commissioner awarded a partial advance of wage-loss benefits. The issues presented for our review are: (1) whether an employee who is receiving wage-loss benefits is entitled to receive an advance payment of those benefits, and (2) whether the order awarding an advance payment must provide for recoupment of the advance by the employer and carrier. We reverse.
In January 1983, claimant suffered a compensable knee injury. As a result of that injury, claimant has undergone two separate knee surgeries. He has not been able to- work since the industrial injury. Claimant and his wife have been receiving compensation benefits in the amount of $514.00 per month, and have no other income.
In addition to his knee injury, claimant suffers from peptic ulcers and clinical depression, both of which have been found by his treating physicians to be related to his industrial injury. Claimant has also required gall bladder surgery and treatment for a polyp, which, though not related to his industrial injury, have added to his financial difficulties.
On October 8, 1985, claimant applied for an advance payment of disability benefits pursuant to Section 440.20(13)(d), Florida Statutes. Claimant based his application for an advance on the fact that' he was temporarily totally disabled due to a work-related knee injury, and resulting ulcer and severe emotional problems. Claimant represented that he was at that time receiving temporary total disability (TTD) benefits, “possibly designated by the employer/carrier as wage-loss benefits.” He conducted a work search in spite of the fact that he was TTD, “for fear that his disability benefits would be terminated if he failed to make a job search.”
On November 12, 1985, a hearing was held on claimant’s application. Claimant testified that he had many unpaid bills related to gall bladder surgery, unconnected with the industrial injury. In addition, claimant had other large outstanding debts. Suffice it to say that the testimony reflected that claimant was in dire financial condition.
The deputy commissioner received medical reports from claimant’s orthopedic surgeon and family physician. These reports indicated claimant is permanently and totally disabled from an orthopedic standpoint, and placed his date of orthopedic maximum medical improvement (MMI) as May 1985.
In the order entered on November 25, 1985, the deputy commissioner found claimant had reached orthopedic MMI, but no final report concerning psychiatric MMI had been filed. In light of the evidence of claimant’s strained financial circumstances and the fact that he had reached orthopedic MMI, the deputy commissioner found that claimant “should not be denied an advance merely on the technicality that he may not have reached psychiatric MMI, for the obvious reason that the financial difficulties, and the resulting stress and worry to the employee, which are causing and aggravating the psychiatric disability, are the same factors which cause the need for an advancement.” The deputy commissioner awarded an advance payment of $5,500 to be paid within twenty-one days from the date of the order, and reserved jurisdiction to determine entitlement to an additional $2,000. A decision regarding repayment of the advance was deferred for a period of six months. On December 18, 1985, an order was entered supplementing the record to include a report prepared by claimant’s treating psychiatrist, and modi *453 fying the order approving the advance to reflect that claimant had reached psychiatric MMI on September 30, 1985.
We note at the outset that we are unable to determine from this record whether pri- or to the hearing on his application for an advance claimant was receiving wage-loss benefits or temporary total disability benefits. The medical evidence indicates that claimant was temporarily and totally disabled, and there is nothing in the record which reflects that any treating physician had released claimant to return to any form of work. Nevertheless, on the advice of counsel, claimant had been conducting a work search. Although the nomenclature has no impact on the dollar amount of the benefits due, since in either event claimant is entitled to receive 66⅜ of the average weekly or monthly wage, it does have significance with regard to the duration of the benefits and the manner in which they are paid.[1]
In the order here appealed, the deputy commissioner found that claimant had reached orthopedic MMI and denominated claimant’s benefits at that point as wage-loss benefits. Thus, the deputy commissioner’s award of $5,500 constituted an advance of wage-loss benefits.
The employer and carrier contend that a lump sum advance of wage-loss benefits is improper because entitlement to such benefits accrues monthly. We agree. Wage-loss benefits, pursuant to the provisions of Section 440.15(3)(b), were designed to compensate an injured worker who has suffered a permanent impairment, for the loss of wage earning capacity occasioned by the industrial injury. In other words, “[t]he workers’ compensation statute is designed to replace actual wages which an injured employee formerly received but later lost by reason of a compensable injury.” National Distillers v. Guthrie, 473 So.2d 806, 808 (Fla. 1st DCA 1985). .The statutory scheme contemplates “the determination of wage-loss benefits on a month-to-month basis in which each month constitutes a separate claim.” National Distillers v. Guthrie, 473 So.2d at 808. See also s. 440.20(4), Fla.Stat. (1981); Couture Fashions, Inc. v. Romay, 461 So.2d 235, 238 (Fla. 1st DCA 1984). Since each month of wage-loss benefits constitutes a separate claim, it follows that the liability for payment of those benefits accrues monthly. Consequently, there is no identifiable indebtedness associated with the wage-loss provisions which could support an award of an advance payment which encompasses an amount more than the amount due as a monthly benefit.
In large measure the deputy commissioner’s award of an advance payment was based on his view that in a very short period of time claimant will be adjudicated permanently and totally disabled. Apparently the only impediment to such a finding at the time of the hearing on the application for an advance was the absence of a determination regarding psychiatric MMI. In light of claimant’s impending status of permanent total disability (PTD), at which point his entitlement to future benefits will be secure, the deputy commissioner concluded that any risk of loss to employer and carrier is slight. It was in this context that the deputy commissioner deferred a decision regarding the process of repayment for a period of six months from the date of the order.
We wish to commend the deputy commissioner for acting on claimant’s application *454 with such promptness. Such action is in keeping with the goal of the workers’ promptness. Such action is in keeping with the goal of the workers’ compensation act.
We also agree with the deputy commissioner that in the circumstances of this case it is very unlikely the employer and carrier would be prejudiced in terms of their ability to recoup an advance payment. Nevertheless, we find an award of an advance payment premature. Until there has been an express finding of permanent disability, claimant has no legal entitlement to future benefits other than on a month-to-month basis. Since there is at present no fund from which an advance payment can be drawn, this cause is reversed and remanded for further consideration of claimant’s status, taking into account the fact that psychiatric MMI has now been established.
Reversed and remanded for proceedings consistent with this opinion.
SMITH and WIGGINTON, JJ., concur.

. s.440.15(2), Fla.Stat. (1981), provides that in the event an employee incurs a temporary total disability, "662/⅞ percent of the average weekly wages shall be paid to the employee during the continuance thereof, not to exceed 350 weeks except as provided in s.440.12(l)."
s. 440.15(3)(b), Fla.Stat. (1981), provides that an injured worker who receives a permanent impairment may be entitled to wage-loss benefits ‘based on actual wage-loss and shall not be subject to the minimum compensation rate set forth in s.440.12(2)_ however, the monthly wage-loss benefits shall not exceed an amount equal to 66¾ percent of the employee’s average monthly wage at the time of injury.” Wage-loss benefits for injuries occurring after July 1, 1980, are payable for "525 weeks after the injured employee reaches maximum medical improvement; or [w]hen the injured employee reaches age 65 and becomes eligible for benefits under 42 U.S.C. ss. 402 and 405; whichever comes first.” s. 440.15(3)(b)l. and 3.c. and d.