# STATE OF FLORIDA v PETRONE

## Case No. 86-16581MMA04

County Court, Palm Beach County

March 3, 1987

### APPEARANCES OF COUNSEL

**Cathleen Burk,** Assistant State Attorney, for plaintiff.

**James Eisenberg** for defendant.

## OPINION OF THE COURT

HOWARD C. BERMAN, County Judge.

This cause came before the Court on February 12, 1987 on Defendant's Motion to Suppress the results of tests done on the Defendant's blood sample. The State was represented by Assistant State Attorney Cathleen Burk and the Defendant was represented by James Eisenberg. The Court having taken testimony, heard the argument of counsel and being otherwise fully advised in the premises, the Court finds as follows:

### FACTS

The State and Defendant have stipulated to the following facts: During the evening of July 9, 1986, the Defendant was involved in a boating accident while driving his boat in the Intracoastal Waterway in Boca Raton, Palm Beach County, Florida. The other boat in the accident was driven by Jerry and Christa Kislia.

Police Officers, Marine Patrol Officers and Paramedics arrived shortly on the scene. The Defendant received a laceration on his forehead and he was taken to a local hospital for stitches.

Christa Kislia received "bruises on her hip, leg and jaw", but was adamant to the Paramedics that she was all right. She was taken to the hospital for observation.

Jerry Kislia complained of pain to his lower back and left ribs. The Paramedics did an on-scene examination of Mr. Kislia's entire body. That is, "slowly and methodically" they palpated (touched) and visually inspected his entire body. The examination revealed tenderness to the left rib area, but "no fracture, deformities or bleeding externally". There was no pain or palpation to the back. Therefore the medics concluded that Kislia had no displaced fracture but could have had a hairline fracture. Therefore, Kislia was taken to the hospital for x-rays. The medics offered to take Mr. Kislia in an immobile position, but Kislia refused. However, he was still taken in an immobile position to the hospital where he was x-rayed. The x-rays showed that he had no fractures.

Paramedic Coine's opinion at the scene was that Mr. Kislia's as well as Mrs. Kislia's injuries were "minor". Mr. Kislia's vital signs were good, he was conscious, coherent and well overted [sic] and his breath signs were clear. In lay terms, Mr. Kislia "appeared to be fine other than complaining of the tenderness in his ribs." As stated by Paramedic Coine:

"in my judgment at the time at the scene as a Paramedic in charge

131

of the patient, the patient was not in immediate life threatening condition."

Florida Marine Patrol Officer Ayala testified that the nature of Jerry Kislia's injury was "pulled muscles in back and arm and a cut chin." Officer Ayala testified that Mr. Kislia complained of back pains, therefore, Officer Ayala believed that Kislia had sustained an injury to his back and subjectively believed that the injury was "severe". Officer Ayala spoke to Mr. Kislia at the hospital and to the Paramedics and stated that Kislia had complained of back injuries. At the hospital, Officer Ayala spoke to the Lab Technician and requested the Lab Technician to draw blood from the Defendant because of the potential back injuries of Mr. Kislia. The blood was drawn approximately 20 minutes after arriving at the hospital. The Defendant objected and tried to resist and Officer Ayala "held his arms down so that Mr. Roberts, the lab technician, could draw blood."

## FINDINGS

The Defendant is attacking the taking of his blood pursuant to Florida Statute 327.353(1)(a). The pertinent portion of the statute reads:

> If a law enforcement officer has probable cause to believe that a vessel operated by a person under the influence of alcoholic beverages or controlled substances has caused death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof. . . The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test. The blood test shall be performed in a reasonable manner.

> (b) The term "serious bodily injury" means a physical condition which creates a substantial risk of death; serious, personal disfigurement; or protracted loss or impairment of the function of any bodily member or organ.

This statute, as well as its "sister" statute, 316.1933 are identical as to the issue of a blood test involving death or serious bodily injury of a human being.

The main issue, then, is the definition of serious bodily injury in relation to Mr. Kislia. This issue appears to be an issue of first impression as there appears to be no case law in the State of Florida. This Court's search, as well as the search by the attorneys, has not brought to light any reported Florida case ruling on this issue. In the

132

Florida cases citing the statute, the injured party either suffered death or there was no question of serious bodily injury involved in an accident. In the case at bar, Mr. Kislia suffered injury to his ribs and complained of lower back pain.

To assist the Court, this Court first looked at Florida's Aggravated Battery Statute, Florida Statute 784.045. One way to prove aggravated battery is to satisfy the essential statutory elements which are great bodily harm, permanent disability or permanent disfigurement. Whether the evidence, in any given case, rises to the level of great bodily harm required by the statute is generally a question for the jury. *Guthrie v. State*, 406 So.2d 357 (Fla. 5th DCA 1981); *Owens v. State*, 289 So.2d 472 (Fla. 2d DCA 1974). In *McKnight v. State*, 492 So.2d 451 (Fla. 4th DCA 1986), the Court ruled that the extent and nature of a victim's injuries vary according to the circumstances peculiar to each situation. In some cases, the extent of injury may not be immediately apparent. Thus, the term "great bodily harm" does not lend itself to precise legal definition. *Owens* cites an Illinois case and an Indiana case. In *People v. Smith*, 284 N.E. 2nd 460 (Ill. App. 3d 1972), the Illinois Court stated:

> Whether aggravated battery is committed when the injury inflicted does not break the skin, does not injure the bones and does not leave disfigurement or permanent injury of any kind, is a question of fact to be determined by a Judge or a jury. . .

> The statutory term great bodily harm is not susceptible to precise legal definition. . . . Defendant asserts that great bodily harm is synonymous with permanent injury. True, it can be argued that all permanent injury constitutes great bodily harm. It does not follow, however, that all great bodily harm consists of permanent injury. Indeed, many serious bodily injuries leave no lasting effect on the health, strength and comfort of the injured person.

*Anderson v. State*, 291 N.W. 2d 579 (Ind. App. 1973) interpreted the aggravated assault and battery charge in which the victim was struck 5 blows with a fist. The Court in affirming the conviction said:

> Great bodily harm defines itself and means great as distinguished from slight, trivial, minor, or moderate harm, and as such does not include mere bruises as are likely to be inflicted in a simple assault and battery. . .

> Whether the evidence describing such harm or injury is in the meaning of the statute . . . is generally a question of fact for the jury.

This Court then turned to Florida's Insurance Code and in particu-

lar, Florida Statute 627.737(2). Case law interprets serious, nonpermanent injuries in reference to personal injury cases. Many cases cite upper and lower back pain as well as muscle spasms. The distinction lies between permanent injury and nonpermanent injury in reference to recovery under the insurance code. See *Mighty National Exterminators, Inc. v. Powers*, 434 So.2d 361 (Fla. 4th DCA 1983), *White v. Arvanitis*, 424 So.2d 886 (Fla. 1st DCA 1982), *Snowden v. Sprouse*, 375 So.2d 901 (Fla. 1st DCA 1979). These cases stated that the Plaintiffs did not meet the threshold requirement of the section providing that a person could recover damages in tort if he sustained serious, nonpermanent injury having a material degree of bearing on his ability to resume normal activity and life-style.

## CONCLUSIONS

Florida Marine Patrol Officer Ayala confronted the situation in which he suspected the Defendant of being under the influence of an alcoholic beverage. He also had another individual complaining of lower back pains as well as bruised ribs. Even though Mr. Kislia was not near death or on the surface appear to suffer serious bodily injury, Officer Ayala had to make a judgment call and he requested a blood sample pursuant to Florida Statute. Lower back pain, although not leaving any type of disfigurement, is one of the largest causes of sick days in American industry. After reviewing the cases on Aggravated Battery and Insurance Law as to the nature of injury, this Court finds that although Officer Ayala acted reasonably under the circumstances, Mr. Kislia's injuries did not rise to the point of "serious bodily injury" so there was no substantial risk of death, serious personal disfigurement or protracted loss or impairment of the function of any bodily member or organ. Therefore, it is

ORDERED AND ADJUDGED that Defendant's Motion to Suppress is hereby granted.

DONE AND ORDERED in West Palm Beach, Palm Beach County, Florida, this 3rd day of March, 1987.