Plaintiff James Daniel Depreast, as administrator of the estate of William B. Depreast, deceased, filed suit against Flint City Nursing Home, Inc., and alleged that the deceased, William B. Depreast, while a patient at the nursing home, fell from a window and sustained injuries which caused his death. In his complaint, the administrator charged that the nursing home was negligent or wanton in causing or allowing the deceased to fall from the window
In its answer, and subsequently at the pre-trial hearing, the nursing home stipulated that plaintiff's intestate died as a result of injuries sustained when he fell from a window, but the nursing home denied that it failed to exercise reasonable care for the deceased's safety. The trial was before a jury, which returned a verdict in favor of the plaintiff in the sum of $225,000
The primary issues determinative of the appeal involve evidentiary questions, viz.:
(1) Did the trial court err in admitting evidence concerning the licensure status of the nursing home and its administrator at the time of and prior to the accident?
(2) Did the trial court err in admitting evidence that the Alabama State Department of Health had cited the nursing home for various deficiencies?
 I
We first discuss the issue of whether the trial court erred in admitting evidence concerning the licensure status of the nursing home and its administrator at the time of and prior to the accident. While we have been unable to locate any Alabama decision which specifically addresses the question of the admissibility of evidence of the licensure status of a business or enterprise or its administrator when the question posed is whether that business or enterprise exercised reasonable care on the occasion of the accident, we determine that this Court's case of Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633 (1954), which involved the admissibility of evidence that a motorist did not possess a driver's license, presented a similar question and is persuasive. The central question tendered to the Court in Lindsey concerned the action of the trial court in refusing to admit evidence proffered by the defendants that while driving his car at the time of the accident, the plaintiff did not have a driver's license. The Court discussed the question of the admissibility of that evidence, as follows:
 "Under Title 36, § 59, Code 1940, a driver's license is required of anyone operating a motor vehicle on the highways of this state; § 63 provides for an examination of the driver prior to the issuance of such license and § 69 makes it a misdemeanor to drive a vehicle without a driver's license. The argument is advanced that on the issue of contributory negligence, evidence that the plaintiff, in violation of Title 36, § 59 et seq., did not have a driver's license was admissible We are aware of the divided authority in other jurisdictions bearing on this question. It is res novo with us *Page 358 
 "The appellants contend that violation of a statute is negligence per se in Alabama, Watts v. Montgomery Traction Co., 175 Ala. 102, 57 So. 471, 472, and that since the appellee's driving without a license was in violation of Title 36, § 59 et seq., on an issue of contributory negligence such violation is conclusively negligence and evidence thereof should necessarily be admitted and is proper on the question of the competency of the driver
 "Mr. Justice Anderson in the Watts v. Montgomery Traction Co. case, supra, cited 29 Cyc. 438 as authority for the rule that `the statute * * * violated * * * [in order to be negligence per se]
must have been enacted for the benefit of the party who seeks to invoke its violation as distinguished from the public generally or a class to whom the ordinance necessarily applies.' And in 29 Cyc. 438 there appears the following statement: `It is necessary, however, that the duty imposed be for the benefit of the person injured * * and where the duty is plainly for the benefit of the public at large the individual acquires no new rights by virtue of its enactment. Whether a liability arising from the breach of a duty prescribed by a statute * * * accrues for the benefit of an individual specially injured thereby, or whether such liability is exclusively of a public character, must depend upon the nature of the duty enjoined and the benefits to be derived from its performance.' (Emphasis added)
 "Some statutes have been held to have been passed for the benefit of particular individuals only and not for the benefit of the public. In this situation, the breach of the statute is negligence per se only if the party invoking such violation is within the class sought to be protected by the statute Louisville N.R. Co. v. Murphree, 129 Ala. 432, 29 So. 592; Central of Georgia R. v. Sturgis, 149 Ala. 573, 43 So. 96
 "It would seem that the statute requiring a driver's license imposes a duty for the benefit of the public at large and the individual defendant therefore, would acquire no new rights by virtue of its enactment, nor would a violation thereof by the plaintiff, although a criminal offense, inure to the benefit of the defendant so as to be pleaded as contributory negligence against the plaintiff in an action for damages arising from an auto collision between them
 "Moreover, there was no evidence in this case nor any offer to show evidence by the appellants-defendants tending to prove a causal relationship between the plaintiff's injuries and the plaintiff's alleged violation of the statute in failing to have a license. This is equally true of the evidence of the refusal upon application to grant the plaintiff a driver's license. By the weight of authority and the better reasoning as we see it, under the facts here presented, evidence that the driver was not licensed as required by statute is inadmissible unless there is some causal relationship between the injuries and the failure to have a license. Upon like reasoning the rejection of the evidence of the refusal upon application to grant the plaintiff a driver's license was proper. See DeVite v. Connecticut Co., 112 Conn. 670, 151 A. 320; Davis v. Gordon, 183 Md. 129, 36 A.2d 699, 156 A.L.R. 1109
(Evidence that defendant's license had been revoked before the accident in question improperly admitted.); Dervin v. Frenier, 91 Vt. 398, 100 A 760; Lindsay v. Cecchi, 3 Boyce 133, 80 A. 523, 35 L.R.A., N.S., 699; Lutfy v. Lockhart, 37 Ariz. 488, 295 P. 975; Speight v. Simonsen, 115 Or. 618, 239 P. 542, 43 A.L.R. 1149; Mahowald v. Beckrich, 212 Minn. 78, 2 N.W.2d 569; Opple v. Ray, 208 Ind. 540, 195 N.E. 81; Strandt v. Cannon, 29 Cal.App.2d 509, 85 P.2d 160; Ross v. Pennsylvania R. Co., 106 N.J.L. 536, 148 A. 741. Prichard v. Collins, 228 Ky. 635, 15 S.W.2d 497 (All evidence with reference to failure of driver to be licensed wholly immaterial.) See also Huddy, 15-16 Ency. of Automobile Law 364, § 193; McElroy, The Law of Evidence in Alabama, § 41, p 14; Gregory, `Breach of Criminal Licensing Statutes in Civil Litigation,' 36 Corn.L.Q. 622 *Page 359 
 "We hold, therefore, that the rejection of evidence that the plaintiff had tried and failed to get a driver's license and that he had never had one was proper."
This Court reached a similar result in Giles v. Gardner,287 Ala. 166, 169, 249 So.2d 824 (1971):
 "Assignment of error two is predicated on the trial court's overruling of the defendant's objection to admitting into evidence the defendant's lack of a driver's license. The only witness presented in behalf of the defendant was the defendant's mother, who had given her son permission to use the car on the day the accident occurred. On cross examination, counsel for plaintiff asked, `You knew that he didn't have a driver's license didn't you? Then, without a ruling on the objection, the trial court asked, `Did he have a driver's license?' There was further objection and the trial court overruled the objection and the witness answered, `No.'
 "Before such evidence is admissible there must be established a causal connection between the failure to have a license and the injuries received in the accident. Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633. In Chattahoochee Valley Railway Company v Williams, 267 Ala. 464, 103 So.2d 762, proof of revocation of a driver's license was held inadmissible absent a showing of a causal connection between such revocation and the injuries received from the accident. The existence or non-existence of a driver's license does not establish the competency or incompetency of a driver. Commercial Union Ins Co. of N.Y. v. Security Gen. Ins. Co., 282 Ala. 344, 211 So.2d 477. In the instant case, no such causal connection is shown. Furthermore, we are of the opinion that the admission into evidence of the failure of the defendant to possess a driver's license was prejudicial error which requires a reversal. See Madison v. State, 40 Ala. App. 62, 109 So.2d 749, cert. denied 268 Ala. 699, 109 So.2d 755, holding that reversible error was committed in admitting evidence of the revocation of the defendant's driver's license in a case where defendant was convicted of manslaughter; and see also, Stanford v. State, 40 Ala. App. 220, 110 So.2d 641, holding that reversible error was committed in allowing testimony that the defendant had no driver's license. That case was a criminal prosecution for leaving the scene of an accident. Although the instant case is civil, we think that the evidence admitted was prejudicial error necessitating a reversal of the judgment."
Although Lindsey and Giles both involved a failure of the person involved to have a driver's license, we think both cases are especially instructive on the legal issue presented in this case — the admissibility of evidence of the failure of a business or person, such as a regulated nursing home and its administrator, to have a license, when the question of actionable negligence on a specific occasion is at issue. As we read Lindsey, and the later case of Giles, evidence that one who is required to have a license by law does not have one, would be admissible only if:
(1) The statute which requires the license was enacted for the benefit of the person who seeks to invoke its violation as distinguished from the public generally or a class to whom the statute necessarily applies, and
(2) There was a causal connection between the failure of the person or business required to be licensed and the injuries suffered
The plaintiff contends that the evidence was admissible under the two-prong test set out in Lindsey. We have studied plaintiff's arguments very closely and we conclude that the two-prong requirement mentioned in Lindsey was not met in this case. The statutes which were enacted to regulate and require nursing homes and their administrators to be licensed, were enacted under the police power to provide for the public
health, welfare and safety, and are designed to protect thepublic generally from incompetent, unethical, and unscientific practitioners in nursing home care. Cf. Dent v. West Virginia, *Page 360 
129 U.S. 114, 9 S.Ct. 231, 332 L.Ed. 623 (1889). As this Court held inLindsey, with regard to the requirement that persons who operate a motor vehicle on the highways of the state must have a driver's license, we hold that the statutes which regulate nursing homes impose a duty for the public at large. Any individual person injured, therefore, would acquire no new rights by virtue of the enactment of the statutes. Lindsey, 260 Ala. at p. 422, 70 So.2d 633. Furthermore, we find no showing of a causal connection between the licensure status of the nursing home and its administrator at the time of and prior to the accident and the injuries received by the plaintiff's intestate
 II
The next issue is whether the trial court erred in admitting evidence that the Alabama State Department of Health had cited the nursing home for various deficiencies
Unquestionably, the nursing home had been cited on previous occasions for many deficiencies. The deficiencies were as follows:
 1. A safe and sanitary environment for patients and personnel does not exist
 2. Special care for patients. Patients with personality problems are not housed in a manner so as to prevent them from disturbing or even hurting other patients
3. Maintenance is poor on building
4. Several windows have loose screens or no screens
 5. Missing window screens and paucity of room air conditioners virtually insures inability to maintain comfortable room temperature
 6. The call system for the patient beds does not operate
 7. The nursing home does not have sufficient housekeepers to keep the building clean
 8. Windows and window sills contain accumulation of dust and grit for more than a day's duration
 9. Unsanitary conditions and offensive odors encountered in any area or section of the facility are indisputable facts that there are insufficient personnel assigned to this department
 10. The nurses' notes do not consistently include pertinent observations relative to the care rendered, i.e., the patient's response and progress to rehabilitative nursing being provided. The notification of the physician and family at the time of significant changes of the patient [sic]
 11. The governing body has not appointed an administrator who functions in a manner so as to plan, organize and direct the enforcement of rules and regulations to assure the health, care and safety of the patients and the protection of their personal rights
 12. This individual is not a licensed nursing home administrator, nor does he have administrative experience in a health care setting
 13. The facility's administrator has not planned ongoing liaison among the governing body, medical and nursing staff, and other professional and supervisory staff of the facility
 14. The governing body has not enforced rules and regulations necessary for the health, care and safety of the patients
 15. The facility's policy relating to notification of physician, next-of-kin and other responsible persons in case of change in patient's status are [sic] not appropriately written to assure that proper notification is made
 16. The education program is not effective as evidenced by the lack of proper orientation of its employees for disaster preparedness, lack of fire drills, lack of orientation and training for dietary employees, unsanitary practices of dietary employees and poor maintenance and storage throughout the facility
Plaintiff, contending that the evidence of these citations was admitted for the purpose *Page 361 
of showing that the defendant nursing home had notice of the dangerous condition of the premises, summarizes his argument for the admissibility of his evidence, as follows:
 "The details of Mr. Depreast's tragic death shock the conscience and strain the imagination. The nursing home was operated and maintained in an incompetent, deplorable manner. It was a death trap for the elderly because the administration failed to implement and enforce basic standards of nursing care for the safety and well-being of its elderly patients. The facility was run down and in a poor state of repair. Insufficient personnel were provided to care for the patients and maintain the nursing home. Employees were not adequately trained in patient care procedures. Nurses and aides failed to record important observations and changes in patients' conditions. Appropriate means were not provided for the blind to identify hazardous areas Problem patients were not housed in a special room to prevent them from harming themselves or others. There was a shortage of restraining devices and patients requiring restraints were sometimes tied down with bed sheets or not restrained at all. The patient call system was not operative. The beds did not have side rails which could be raised to contain the patients The air conditioning system was constantly broken down, making it necessary to raise the second floor windows for ventilation. There were no protective devices provided to prevent patients from going out the windows, except for screens, and some of those were always missing or loose
 "While Mr. Depreast was a patient at the nursing home, the State Health Department repeatedly notified the nursing home that its nursing care was improper in all the above areas. Even after these numerous warnings, the dangerous conditions continued to exist at the nursing home throughout Mr. Depreast's stay, exhibiting total disregard for the nursing care and safety of Mr. Depreast
 "This shocking state of affairs which existed at Flint City Nursing Home in May 1978 can be traced directly to the negligent entrustment of the management and patient care of the nursing home to Clarence Shelton, who was totally untrained, inexperienced and incompetent
* * * * * *
 "Mr. Depreast's death was a proximate consequence of the overall mismanagement of the facility. This nursing home was a death trap for elderly patients like Mr. Depreast. His death was directly caused by a multitude of violations of the minimum standards of care established by state and federal laws for the care of nursing home patients."
Plaintiff argues that "evidence of deficiencies found by the State Department of Health was admitted for the purpose of showing notice to the nursing home of dangerous conditions existing at the nursing home and inadequate policies and procedures relative to the care and well-being of its patients." Plaintiff argues that the trial court had discretion to decide whether or not to permit these deficiencies to be shown and that the evidence of the deficiencies was allowed for "the limited purpose of showing notice to the nursing home, and [the court] so instructed the jury during the trial." Plaintiff is correct. The court did instruct the jury that evidence of past deficiencies was admitted for the purpose of showing notice.[1] *Page 362 
Plaintiff contends that in view of the instruction which limited the jury's consideration of the evidence no prejudicial error was shown. Because the court did instruct the jury as it did, this case presents a difficult question on the presence or absence of prejudice. Plaintiff is correct in contending that evidence of knowledge by an alleged tort-feasor of a defective condition is admissible to show that notice was brought home to him of the defective condition. The rule of law is that, in an action for injury, under certain circumstances, especially when knowledge of the defective condition may be an issue, evidence of notice to the alleged tort-feasor, prior to the accident and suit, of the alleged dangerous condition, is relevant to the issue of negligence. Alabama Great Southern Railway Company vChoate, 184 Ala. 636, 64 So. 78 (1913). On the other hand, good or bad character of a party in a civil action which is offered as tending to show that party's conduct on a specified occasion, is generally excluded. C. Gamble, McElroy's AlabamaEvidence, § 34.01, p. 60. Nevertheless, the alleged defect, the notice of which was brought home to the tort-feasor, must have been one which proximately caused or proximately contributed to the injury or death complained of
Applying the above-stated rule to the facts of this case, we determine that deficiencies which are numbered 5, 7, 8 and 15, were inadmissible. With regard to the other deficiencies we express no opinion, especially since the cause must be reversed on another point. If the case is re-tried, the question of admissibility of these other deficiencies may not arise, and if the question does arise, the parties and the court may well handle the matter differently than the matter was handled in the first trial
 CONCLUSION
We have made a full and fair examination of the record in this case, and we have carefully researched Alabama law regarding the evidentiary questions posed on this appeal, and we are convinced that the trial court (1) erred in admitting evidence which related to the licensure status of the nursing home and administrator and, (2) under the facts of this case, erred in admitting evidence concerning deficiencies numbered 5, 7, 8 and 15, which deficiencies were noted by inspectors of the Health Department, even though the court gave a limiting instruction with regard to the effect of the evidence of those deficiencies
Even though we reverse the case, we are compelled to point out that the record contains sufficient evidence from which the jury could have found that the defendant was negligent on the occasion complained of, without considering the evidence we hold should not have been admitted. We would be reluctant to reverse the judgment of the trial court and order a new trial in this case except for the fact that we are not convinced that the admissibility of the evidence which we have determined should have been excluded did not affect the measure of damages assessed by the jury; therefore, we conclude that the nursing home is entitled to a new trial. Because of the judgment we reach on the evidentiary issues, we do not discuss the nursing home's contention that the verdict was excessive, but we should not be understood as agreeing with the nursing home's contention that the verdict was excessive. We only hold that the admission of the prejudicial evidence could have affected the size of the verdict, and because of that fact, we cannot apply the harmless error rule. Rule 45, A.R.A.P *Page 363 
The judgment of the trial court is due to be reversed and the cause remanded
REVERSED AND REMANDED
TORBERT, C.J., and JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur
FAULKNER and ALMON, JJ., not sitting
[1] "THE COURT: In conjunction with the objections that have been made and the offers of evidence concerning deficiencies. You have heard me limit several items, ladies and gentlemen, in the testimony in the face of objection, and I will give you this instruction as concerns these alleged notices from the Department of Public Health: You may consider deficiencies cited by the Department of Public Health to the end that such would logically tend to put the defendant or its agents on notice — if you are reasonably satisfied that they had such a tendency. You should not consider them as being true That would be hearsay. You should not consider any deficiency that you are not reasonably satisfied from the evidence logically tended to notify the defendant that specific conditions existed which might proximately cause injury to a patient if not corrected
 "You have heard me say several times I will let it in on the purpose of notice. They are allowed for that purpose, and not for the purpose of the truth of what is in them
 "The statements made by someone would have a tendency to notify somebody of an existing condition if a jury was reasonably satisfied after it was over with and had all the evidence that the reasonable [sic] conditions existed, whether the truth of what the person said was so or not
 "It is not allowed for the purpose of bolstering up or supporting that position. It is allowed only for the purpose of notice
"With that instruction, I will let you go ahead.