PER CURIAM.
Faye B. Gilmer appeals from a summary judgment entered in favor of Crestview Memorial Funeral Home, Inc. (“Crest-view”), Garland “Sonny” Jones, Barry Taul, and Mary Caldwell. At the time the services that are the basis for the underlying action were performed, Jones was the owner and president of Crestview, Taul was the manager of Crestview, and Caldwell was an apprentice embalmer and funeral director for Crestview. We affirm in part, reverse in part, and remand.

Procedural History

On December 19, 2003, Gilmer sued Crestview, Jones, Taul, and Caldwell. The complaint alleged the tort of outrage, negligence and/or wantonness, suppression, and breach of contract. All the claims related to the funeral services, including *588 embalming, provided by Crestview to Gil-mer in connection with the burial of her deceased husband. On March 23, 2004, the defendants filed a joint answer to the complaint. On May 16, 2005, Gilmer amended her complaint to add a claim against Crestview and Jones alleging negligent, willful, or wanton hiring, training, or supervising of employees.
On September 1, 2005, the defendants filed a joint motion for a summary judgment, along with evidentiary materials to support the motion. On October 18, 2005, Gilmer filed a response to the defendants’ summary-judgment motion, along with supporting evidentiary materials. On November 14, 2005, Gilmer filed a motion requesting an order to allow the issuance of a nonparty subpoena to the Alabama Board of Funeral Service. On November 17, 2005, Gilmer filed a motion requesting that the trial court extend the discovery deadlines. On December 6, 2005, Gilmer filed a second response to the defendants’ summary-judgment motion, along with an affidavit from the executive secretary of the Alabama Board of Funeral Service. On December 12, 2005, the trial court entered an order, purporting to enter a summary judgment for Gilmer and to deny the defendants’ summary-judgment motion. However, on December 16, 2005, the trial court amended its order to simply deny the defendants’ summary-judgment motion and to grant Gilmer’s motion for an extension of time to complete discovery and her motion for an order allowing the issuance of a nonparty subpoena.
On May 8, 2006, the day the case was set for trial, the defendants filed a motion in open court to dismiss Gilmer’s complaint under Rule 12(b)(6), Ala. R. Civ. P. On May 10, 2006, “[u]pon hearing extensive oral arguments of counsel and upon review of the pleadings and evidentiary submissions to the court,” the trial court granted the motion to dismiss all the claims in Gilmer’s complaint and amended complaint. On May 24, 2006, Gilmer filed a motion to alter, amend, or vacate the judgment. The trial court denied this motion on June 23, 2006, but the court set aside this denial and set a hearing on the motion for June 30, 2006. After conducting the hearing, the trial court again denied the motion on June 30, 2006. On July 5, 2006, Gilmer appealed.

Facts

Shortly after her husband’s death, Gil-mer contacted Crestview to provide funeral and burial services for her husband. On July 17, 2003, Gilmer signed an “Authorization to Embalm and Prepare.” The document authorized Crestview to embalm the body of Gilmer’s husband “us[ing] the services of independent embalmers, apprentices or student interns in connection with such embalming, care and preparation for disposition, provided that any person rendering such services is allowed to perform such work under applicable law.”
Billy Groves was the only licensed embalmer employed by Crestview on July 17, 2003. According to his affidavit, Groves was on medical leave and did not participate in any embalming services from June 30, 2003, to July 31, 2003. Groves stated that he was aware that Caldwell and Taul had claimed that the embalming services performed on Gilmer’s husband’s body were done under Groves’s direction and/or supervision; Groves stated in his affidavit, however, that this claim was false. Groves stated that, at the time the embalming services were rendered, he was not aware that Caldwell or Taul had embalmed the body of Gilmer’s husband. Groves stated that he later learned that Caldwell and/or Taul had been forging Groves’s signature on the official embalming log maintained by Crestview for inspection by the Ala *589 bama Board of Funeral Service, and Groves learned that Taul had forged Groves’s name on the embalming log for the embalming services performed on Gil-mer’s husband’s body.[1]
Taul testified that he had embalmed the body of Gilmer’s husband; Taul acknowledged that he was not a licensed embalmer or a certified apprentice embalmer when he did so. According to Taul, while Groves was on medical leave, Crestview would sometimes hire a “contract embalmer” to perform embalming services usually performed by Groves. Taul testified that Crestview did not charge the customer extra when a contract embalmer was hired; thus, he said, it was more profitable for Crestview to have an employee perform the embalming services without hiring a contract embalmer.
The day after Taul embalmed the body of Gilmer’s husband, Caldwell completed a clinical embalming report describing the embalming procedure. Taul told Caldwell what to write in the report. Caldwell signed the report and wrote the word “embalmer” beside her signature. Taul’s name did not appear on this report. Both Caldwell and Taul testified that Caldwell did not embalm the body of Gilmer’s husband and that she was not present when Gilmer’s husband’s body was embalmed by Taul.
Gilmer testified that shortly after her husband’s death her daughter read her an article about Crestview that appeared in the newspaper. Gilmer understood this article to say that every body that had been embalmed at Crestview during July 2003 had not been embalmed by a licensed embalmer. Gilmer testified that at this time her mental anguish “start[ed] being almost unbearable.” According to Gilmer, she and her daughter began to investigate whether her husband’s body had been embalmed by a licensed embalmer. This investigation included telephoning Crestview several times in an attempt to see the license of the person who had embalmed Gilmer’s husband’s body. According to Gilmer, Crestview eventually told Gilmer’s daughter that she could see the embalmer’s license, and Crestview gave her a copy of Caldwell’s embalming license. Caldwell testified that she was not licensed to embalm in Alabama until July 31, 2003, over two weeks after the body of Gilmer’s husband was embalmed. Caldwell also testified that she had nothing to do with the actual embalming of Gilmer’s husband’s body.
Gilmer testified that her husband was buried on July 19, 2003, and that Caldwell, who was directing the funeral, rushed the graveside service and did not give Gilmer enough time to greet the people who attended. According to Gilmer, Caldwell told Gilmer that her daughters were ready to start the funeral service, while separately telling the daughters that Gilmer wanted to go ahead and “get [the service] over with.” Gilmer testified that she did not complain to anyone at the time about being rushed. Gilmer also testified that the only *590 thing that prevented her from greeting people after the graveside service was not Caldwell, but the heat.
Gilmer testified that, based on her observation while at the graveside service of the hinges on her husband’s casket and her observation of the hinges in pictures taken at the service, Gilmer became worried that the casket had been turned in the wrong direction when her husband was buried. Gilmer said that several days after the service she had a telephone conversation with Taul about her concern. Taul assured Gilmer that her husband’s casket was not turned in the wrong direction and that the casket had hinges on both sides. However, Taul testified that, shortly after the telephone conversation, he discovered that the casket Gilmer’s husband was buried in did not have hinges on both sides. Taul said he never informed Gilmer that his statement about the hinges was incorrect. According to Gilmer, a few days after she spoke with Taul she had a meeting with Jones, and he admitted that the casket did not have hinges on both sides and that the casket had apparently been turned in the wrong direction when Gil-mer’s husband was buried.
Jones testified that he was not involved in the day-to-day operations of Crestview. Generally, Jones would visit Crestview two or three times a week. Jones testified that it was his understanding that, if the licensed embalmer was on vacation or out sick and the manager of the funeral home was not a licensed embalmer, the manager would contract with an independent embalmer to perform the embalming services.

Standard, of Review

In the present ease, both parties appear to treat the defendants’ “motion to dismiss plaintiffs complaint” as a motion to dismiss for failure to state a claim under Rule 12(b)(6), Ala. R. Civ. P. However, in reaching its decision to grant this motion, the trial court explicitly states that it reviewed “evidentiary submissions.”
This Court has held:
“ ‘When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala. R. Civ. P.; this is the case regardless of what the motion has been called or how it was treated by the trial court, Papastefan v. B & L Constr. Co., 356 So.2d 158 (Ala.1978); Thorne v. Odom, 349 So.2d 1126 (Ala.1977). “Once matters outside the pleadings are considered, the requirements of Rule 56, [Ala. R. Civ. P.], become operable and the ‘moving party’s burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.’ C. Wright & A. Miller, Federal Practice & Procedure, Civil, § 1366 at 681 (1969).” Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala.1986).’ ”
Robinson v. Benton, 842 So.2d 631, 634 (Ala.2002) (quoting Hornsby v. Sessions, 703 So.2d 932, 937-38 (Ala.1997)).
In Pittman v. United Toll Systems, LLC, 882 So.2d 842 (Ala.2003), this Court set forth the standard of review applicable to a ruling on a motion for a summary judgment, as follows:
“This Court’s review of a summary judgment is de novo.
“ ‘In reviewing the disposition of a motion for summary judgment, “we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was “entitled to a judgment as a matter of law.” Wright v. Wright, 654 So.2d *591 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993) [overruled on other grounds, Bruce v. Cole, 854 So.2d 47 (Ala.2003) ]; Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).’ ”
882 So.2d at 844 (quoting Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997)).

Discussion

The only argument presented in the defendants’ motion was that all Gilmer’s claims should be dismissed because, the defendants said, all of her claims arise solely from her allegation that the defendants had violated § 34-13-112, Ala.Code 1975, a part of Title 34, Chapter 13, “Funeral Services,” which provides that “[a]ll embalming must be performed under a licensed embalmer .... ” The defendants argued that Gilmer’s claims cannot be maintained because, they say, § 34-13-112 does not create a private cause of action and a violation of that statute does not constitute negligence per se. In response to the defendants’ motion, Gilmer did not argue that § 34-13-112 creates a private cause of action or that a violation of the statute constitutes negligence per se. Instead, Gilmer argued that the claims asserted in her complaint are valid common-law causes of action that are not based solely on § 34-13-112. Gilmer contended that she merely referenced § 34-13-112 in her complaint to help establish some of the elements of her common-law claims.
On appeal, the parties present the same arguments they presented to the trial court. In White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042 (Ala.2008), this Court held that, in responding to a summary-judgment motion, a nonmovant is not required to present substantial evidence of elements of a claim that are not challenged by the movant. Specifically, this Court held:
“ ‘The [summary-judgment] movant has the initial burden of making a prima facie showing that there is no genuine issue of material fact; if the movant makes that showing, the burden then shifts to the nonmovant to present substantial evidence of each element of the claim challenged by the movant.’ Harper v. Winston County, 892 So.2d 346, 349 (Ala.2004) (emphasis added). However, if the movant does not satisfy his initial burden, ‘then he is not entitled to judgment. No defense to an insufficient showing is required.’ Ray v. Midfield Park, Inc., 293 Ala. 609, 612, 308 So.2d 686, 688 (1975) (emphasis added). ‘A motion that does not comply with Rule 56(c)[, Ala. R. Civ. P.,] does not require a response in defense from the nonmovant.’ Horn v. Fadal Machining Ctrs., LLC, 972 So.2d 63, 70 (Ala.2007). Simply stated, ‘ “[a] summary judgment is not proper if the movant has not complied with the requirements of Rule *592 56.” ’ 972 So.2d at 70 (quoting Northwest Florida Truss, Inc. v. Baldwin County Comm’n, 782 So.2d 274, 277 (Ala.2000)).”
998 So.2d at 1054-55. Therefore, this Court will address only the issue whether the claims asserted in Gilmer’s complaint are dependent upon the existence of a private cause of action under § 84-13-112. This opinion will not address whether Gil-mer has presented substantial evidence of every element of each of her claims because the defendants’ motion, which argued only that Gilmer had no private cause of action under § 34-13-112, was so narrowly drawn as not to require such a response from Gilmer.
In Gilmer’s brief on appeal she appears to concede, as she did before the trial court, that § 34-13-112 does not permit her to bring a private action under that statute and that a violation of the statute does not constitute negligence per se. Gil-mer’s brief, at 47. We assume, without deciding, that that is the case. Gilmer simply argues that her claims do not arise from § 34-13-112. In response, the defendants spend the majority of their brief discussing prior decisions of this Court and of the Alabama Court of Civil Appeals that concern the violation of particular statutes or ordinances and whether those statutes or ordinances permit a private cause of action predicated on a violation of the statute or ordinance.[2] Based on these prior decisions, the defendants argue that “Gil-mer has not presented any evidence to support the claim that § 34-13-112 creates or implies a private cause of action.” Defendants’ brief, at 13. However, this discussion is generally inapplicable to Gil-mer’s argument because she does not claim that § 34-13-112 creates or implies a private cause of action.
The defendants’ response to Gilmer’s actual argument is simply to dismiss it as “absurd.” Defendants’ brief, at 16. The defendants allege that Gilmer’s claims “all revolve around Crestview Memorial Funeral Home not having a licensed embalmer,” and “are based squarely on a violation of the licensing statute.” Defendants’ brief, at 15-16. The defendants bring to this Court’s attention the numerous times Gilmer alleges in her complaint that a licensed embalmer did not embalm her husband’s body, in violation of Alabama law. The defendants do not address Gil-mer’s claims individually. Nevertheless, *593 despite the defendants’ assurance that Gil-mer’s argument is nonsensical, this Court must examine each of Gilmer’s claims and decide whether each claim states a cause of action arising under § 34-13-112, which for purposes of this appeal we assume does not provide Gilmer a private cause of action, or whether each claim states a common-law cause of action that is not dependent upon a private cause of action being conferred by § 34-13-112.
The defendants discuss two prior decisions of this Court that provide some general guidance in the present situation, although they are not determinative: Flint City Nursing Home, Inc. v. Depreast, 406 So.2d 356 (Ala.1981), and Blockbuster, Inc. v. White, 819 So.2d 43 (Ala.2001).
In Flint City Nursing Home, the administrator of the estate of a decedent sued a nursing home, alleging that the negligence or wantonness of the nursing home resulted in the decedent’s fall from a window, as a result of which he sustained injuries that caused his death. 406 So.2d at 357. One issue before this Court was whether the trial court erred in admitting evidence concerning the licensure status of the nursing home and its administrator at the time of the accident. This Court was unable to locate any prior Alabama decision that “specifically addresse[d] the question of the admissibility of evidence of the licensure status of a business or enterprise or its administrator when the question posed is whether that business or enterprise exercised reasonable care on the occasion of the accident .... ” 406 So.2d at 357. However, this Court found persuasive two prior decisions that held that a trial court must refuse to admit evidence indicating that a party did not have a driver’s license while driving a car that had been involved in an accident, unless the party who proffered the evidence could establish a causal connection between the failure to have a license and the injuries received in the accident. 406 So.2d at 357-59. After examining those two decisions, this Court held that when a question of actionable negligence on a specific occasion is in issue,
“evidence that one who is required to have a license by law does not have one, would be admissible only if:
“(1) The statute which requires the license was enacted for the benefit of the person who seeks to invoke its violation as distinguished from the public generally or a class to whom the statute necessarily applies, and
“(2) There was a causal connection between the failure of the person or business required to be licensed and the injuries suffered.”
Flint City Nursing Home, 406 So.2d at 359.
In Blockbuster, a patron sued a videotape rental retailer alleging breach of contract, unjust enrichment, fraud, negligence, and conversion. 819 So.2d at 43. The patron alleged that he had been a customer of the retailer’s for six years and that the retailer wrongfully included in its rental charges and passed on to its customers a rental tax imposed upon the retailer by § 40-12-222, Ala.Code 1975. 819 So.2d at 44. The trial court denied the retailer’s motion to dismiss the complaint. 819 So.2d at 43. This Court “granted [the retailer’s] permissive appeal to address whether § 40-12-222 permits a private cause of action.” 819 So.2d at 45. On appeal, the patron, like Gilmer in the present case, admitted that there was no legislative intent to create a private cause of action when the legislature adopted the rental-tax statute. 819 So.2d at 44. Instead, the patron contended that he was not attempting to assert a private cause of action under the rental-tax statute but was merely seeking to recoup under common- *594 law causes of action that which the retailer had taken from him. Id. Without explanation, this Court stated that “each of [the patron’s] common-law causes of action is predicated upon [the retailer’s] alleged violation of § 40-12-222.” 819 So.2d at 45. However, this Court noted that, unlike the present case, “[t]he question whether [the patron] has common-law causes of action against [the retailer] that are not private rights of action under the Rental Tax Statute is not before us.” 819 So.2d at 45 n. 2. Ultimately, this Court concluded that the rental-tax statute did not permit a private cause of action, and this Court also explicitly found that “[the retailer] was authorized by Alabama law to pass along the rental tax to its customers.” Id. at 46.
In the present situation, Gilmer first alleges that her breach-of-contract claim arises from her contract with Crest-view to provide the funeral and burial services for her husband, not from § 34-13-112. Gilmer contends that it was necessary to reference § 34-13-112 to show that the contract had been breached, but the source of her claim, she says, is the contract. “A plaintiff can establish a breach-of-contract claim by showing ‘(1) the' existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.’ ” State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala.1999) (quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995)). Gilmer presented evidence indicating that she had entered into a contract with Crestview to provide funeral and burial services for her deceased husband and that part of that contractual agreement was an “Authorization to Embalm and Prepare” document. This document explicitly authorized Crestview to embalm her husband’s body using only the services of people who are “allowed to perform such work under applicable law.” Gilmer claims that the applicable law was not followed when her husband’s body was embalmed and, thus, that a specific written provision of the contract was breached. Although it is necessary for Gilmer to demonstrate that her husband’s body was not embalmed pursuant to § 34-13-112 or some other “applicable law” in order to pursue her breach-of-contract claim, this claim stems from a reference to and construction of the contract itself, not § 34-13-112. Therefore, the trial court erred in entering a summary judgment for the defendants on Gilmer’s breach-of-contract claim based on the argument that the claim is based solely on § 34-13-112.
Gilmer next argues that her suppression claim is not based on § 34-13-112.
“To make out a suppression claim, a plaintiff must show that the defendant had a duty to disclose a material fact and failed to do so, that the concealment or failure to disclose induced the plaintiff to act, and that the plaintiff suffered actual damage as a result. Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909, 918 (Ala.1994). One may be liable for suppression only if he has knowledge of the fact allegedly suppressed and only if he is under a duty to disclose. A duty to disclose may arise from a confidential relationship, from a request for information, or from the circumstances of the case. Id.; § 6-5-102, Ala.Code 1975. ‘If a plaintiff offers evidence of particular circumstances creating an inference that the defendant should have disclosed certain material facts, then whether the defendant had a duty to communicate those facts is for the jury to determine.’ Hines, supra, at 918.”
*595 LaCoste v. SCI Alabama Funeral Servs., Inc., 689 So.2d 76, 79-80 (Ala.Civ.App.1996).
Again, the question whether Gilmer has presented substantial evidence of each element of her suppression claim is not before this Court. This Court need only decide whether Gilmer’s suppression claim arises from § 34-18-112. Gilmer alleges that the defendants concealed or failed to disclose the fact that her husband’s body would not be embalmed by a licensed embalmer and that this concealment or failure to disclose induced her to enter into a contract with Crestview for funeral and burial services that she would not have entered into if she would have known that a licensed embalmer would not be available to embalm her husband’s body. We hold that this allegation originates from the defendants’ alleged failure to fulfill their duty to disclose to Gilmer certain facts that were known to them. This duty may originate from a confidential relationship between the parties or from the particular circumstances of this case, but the duty to disclose does not originate from § 34-13-112. Therefore, the trial court erred in entering a summary judgment for the defendants on Gilmer’s suppression claim based on the argument that the claim is based solely on § 34-13-112.
Next, Gilmer alleges that her tort-of-outrage claim is not based on § 34-13-112. In order to recover on this claim, Gilmer must demonstrate that the defendants’ conduct “ ‘(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.’” Potts v. Hayes, 771 So.2d 462, 465 (Ala.2000) (quoting Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44 (Ala.1990)). This Court has recognized the tort of outrage in the family-burial context. Whitt v. Hulsey, 519 So.2d 901 (Ala.1987).
Gilmer claims that the following conduct by the defendants was extreme and outrageous: “(1) [Her husband’s] body being embalmed by someone without proper authorization and [without] Faye Gilmer’s consent, (2) the unjustified rushing of the graveside service, (3) the placement of [her husband’s] body in the wrong direction, and (4) attempting to cover-up the wrongful conduct by lying to Faye Gilmer and providing her with false and misleading documents.” Gilmer’s brief, at 35. This Court need not decide whether any of this specific conduct is actionable as the tort of outrage because, as previously noted, that issue was not raised in the summary-judgment motion. This Court need decide only whether Gilmer’s tort-of-outrage claim arises from § 34-13-112. To the extent that Gilmer bases her tort-of-outrage claim on the alleged rushing of the graveside service, the alleged burial of her husband’s casket in the wrong direction, or the defendants’ alleged conduct in attempting to cover up prior "wrongful conduct, the tort-of-outrage claim is completely independent of § 34-13-112. Consideration of whether the defendants’ conduct is outrageous would be resolved without any reference to § 34-13-112. To the extent that Gilmer’s tort-of-outrage claim is based on her allegation that her husband’s body was embalmed without proper authorization or consent, the claim arises from the defendants’ conduct and the contract between the parties, not from § 34-13-112. Therefore, the trial court erred in entering a summary judgment for the defendants on Gilmer’s tort-of-outrage claim based on the defendants’ argument that that claim is based solely on § 34-13-112.
Finally, Gilmer argues that her negligent-supervision claim against Crest-view and Jones is not based solely on *596 § 34-18-112. Gilmer alleges that this claim is predicated on Crestview and Jones’s failure to supervise the activities of Taul and Caldwell. Specifically, Gilmer alleges:
“There is ample evidence that Crestview and Sonny Jones condoned Barry Taul’s practice of personally embalming bodies when Billy Groves was absent.... Crestview and Sonny Jones knew, or should have known, that a licensed embalmer had not been engaged on an independent-contractor basis, to ‘fill in’ for Billy Groves during his extended medical leave. There was a complete failure to supervise Barry Taul so that he understood that he was not to embalm bodies since he was not authorized to provide embalming services under Alabama law.... References to statutory provisions merely provide definitional information to show how there was a failure to properly supervise Barry Taul and Meg Caldwell.”
Gilmer’s brief, at 46.
Contrary to Gilmer’s assertion, Gilmer’s negligent-supervision claim is based solely on a violation of § 34-13-112. To prove a claim of negligent supervision, a plaintiff must show that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent. Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 682 (Ala.2001). The only evidence Gilmer presented to demonstrate the incompetence of a Crestview employee is the evidence indicating that Taul performed embalming services while he was not licensed or performing “under a licensed embalmer,” in violation of § 34-13-112. Therefore, the negligent-supervision claim is based solely on a violation of the statute; thus, a summary judgment for Crestview and Jones on this claim is proper.
Gilmer does not specifically discuss her negligence and/or wantonness claim in her brief to this Court. Neither does she specifically explain why this claim does not arise from § 34-13-112. Therefore, Gilmer waives any argument concerning this claim, and the defendants are entitled to a summary judgment on this claim. See Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (“ ‘An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.’ ” (quoting Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988), citing in turn Ex parte Riley, 464 So.2d 92 (Ala.1985))).
Finally, we recognize that Jones has filed a brief on appeal separate from the joint brief filed by Crestview, Taul, and Caldwell. In his individual brief, Jones adopts all the arguments set forth by Crestview but, additionally, Jones argues that he cannot be held personally liable for any of the alleged torts of Crestview. Before this Court, Gilmer mentions Jones only when discussing her negligent-supervision claim, and she presents no other argument as to why the summary judgment for Jones should be reversed regarding any other claim. Consequently, in light of our earlier disposition of the negligent-supervision claim, we affirm the trial court’s summary judgment in favor of Jones on all claims.

Conclusion

We affirm the summary judgment for Jones on all claims, and we affirm the summary judgment for Crestview on Gil-mer’s negligent-supervision claim against it and for all the defendants on her negligence and/or wantonness claims. We reverse the summary judgment for Crest-view, Taul, and Caldwell as to Gilmer’s breach-of-contract, suppression, and tort- *597 of-outrage claims. We remand this case for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
COBB, C.J., and MURDOCK, J„ concur in part and dissent in part.

. Regulation 395-X-6-.06, Ala. Admin. Code (Alabama Board of Funeral Service), provides:
"Each funeral establishment in the state, beginning January 1, 1986, shall keep a record of each human dead body embalmed at said establishment and shall retain such record for a period of not less than four (4) years. The record may be in simple log form, but shall contain the name of the deceased, date of embalming, time embalming procedure began and ended, and the signature of the embalmer. Said records may contain any additional information, at the discretion of the establishment, so long as it meets the aforementioned provisions. Embalming records will be checked during the annual inspection beginning fiscal year 1986-87.”

. See Parker Bldg. Servs. Co. v. Lightsey, 925 So.2d 927 (Ala.2005) (holding that the trial court erroneously instructed the jury that negligence per se applied to a violation of a municipal building code because the building code was adopted for the benefit of the general public and not for benefit of a distinguishable class of persons); Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013 (Ala.2003) (holding that an insurer was not entitled to bring a private action for a health-care provider’s alleged breach of a statute governing the hospital’s itemized billing statement to a patient because the statute contained no language suggesting that the legislature intended to create a private cause of action for any violation); Lary v. Flasch Bus. Consulting, 878 So.2d 1158 (Ala.Civ.App.2003) (holding that a physician did not have a private cause of action to assert a violation of a section of the Telephone Consumer Protection Act ("the TCPA”) barring facsimile or telephone communications using automatic telephone-dialing systems that did not comply with federal standards because, unlike other sections of the TCPA, the section relating to noncompli-ant systems did not authorize actions by private citizens); and Thomas Learning Ctr., Inc. v. McGuirk, 766 So.2d 161 (Ala.Civ.App.1998) (plurality opinion) (stating that a builder’s act of obtaining a building permit for another builder in violation of general-contractor licensing statutes did not provide the owner of the building with a cause of action for negligence against the builder who obtained the permit because the licensure statutes were enacted for the benefit of the public generally as distinguished from the owner).