WOODALL, Justice.
Faye B. Gilmer sued Crestview Memorial Funeral Home, Inc. (“Crestview”), Garland Jones, Barry Taul, and Mary (“Meg”) Caldwell, alleging claims related to services Crestview had provided with regard to the funeral of Gilmer’s husband, Jack Gilmer (“Jack”). The trial court entered a summary judgment in favor of the defendants on all the claims against them. Gil-mer appealed, and this Court affirmed the trial court’s judgment as to the claims against Jones, the negligent-supervision claim against Jones and Crestview, and the negligent- or wanton-conduct claim against all the defendants, reversed the trial court’s judgment as to the tort-of-outrage, suppression, and breach-of-contract claims against Crestview, Taul, and Caldwell, and remanded the case for further proceedings consistent with our opinion. Gilmer v. Crestview Mem’l Funeral Home, Inc., 35 So.3d 585 (Ala.2009) (“Gilmer I”).
The case was then tried before a jury, and Taul and Caldwell were eventually dismissed from the action. The trial court granted Gilmer’s motion for a judgment as a matter of law (“JML”) on the breach-of-contract claim. The suppression and tort-of-outrage claims were submitted to the jury, which returned a verdict in Crest-view’s favor on the tort-of-outrage claim and in Gilmer’s favor on the suppression claim. The jury awarded Gilmer $350,000 in compensatory damages on the suppression and breach-of-contract claims[1] and $3 million in punitive damages on the suppression claim. The trial court entered a judgment based on that verdict, but later remitted the punitive-damages award to $1,050,000, pursuant to § 6-ll-21(a), Ala. Code 1975.
Crestview has appealed the trial court’s judgment as to the breach-of-contract and suppression claims, as well as the compensatory-damages and punitive-damages awards.[2] We reverse the trial court’s *588 judgment and remand the case for a new trial on the breach-of-contract and suppression claims.

Facts and Procedural History

Jack died on July 16, 2003. That same night, Gilmer spoke with Taul, the manager of Crestview, by telephone to set up a time for her to go to Crestview to arrange for Jack’s funeral. During the conversation, according to Taul, he asked for and received Gilmer’s oral authorization to embalm Jack’s body.
On July 17, 2008, Gilmer went to the funeral home operated by Crestview, where she met with Caldwell, the funeral director, to arrange the funeral. During their meeting, Caldwell asked Gilmer to sign an “Authorization to Embalm and Prepare” (“the authorization”), which provided, among other things, that Crestview could “use the services of independent embalmers, apprentices or student interns in connection with such embalming, care and preparation for disposition, provided that any person rendering such services is allowed to perform such work under applicable law.”
At the time Gilmer signed the authorization, Crestviev/s only licensed embalmer, Billy Groves, was on medical leave and was not available to embalm Jack’s body. Caldwell did not tell Gilmer that Groves was on leave. Gilmer testified that she did not read the authorization before signing it and that, to her recollection, Caldwell and she did not discuss who would do the embalming. However, Gilmer also testified that had she known that Crestview did not have a licensed embalmer available, she would have gone to a different funeral home.
The evidence indicated that, when Groves was unavailable, Crestview sometimes contracted with other licensed embalmers to do embalming at its funeral home. However, that did not occur in this case. Instead, Taul, who was neither an apprentice nor a licensed embalmer, embalmed Jack’s body. Taul testified that, although he was not licensed at that time, he had embalmed thousands of bodies and had been working in the funeral industry since 1987.[3] When Caldwell met with Gil-mer about Jack’s funeral, Caldwell was an apprentice embalmer, and, although she had completed all the necessary steps to become a licensed embalmer, she had not yet received her license. Caldwell became a licensed embalmer on July 31, 2003, two weeks after Jack’s body was embalmed.
The record also indicates that, after Jack’s body was embalmed, Caldwell completed an internal embalming report describing the embalming process. Taul testified that he told Caldwell what to put in the report. Caldwell signed the report and wrote “embalmer” by her signature, even though she had not embalmed Jack’s body and was not present when Taul performed the embalming.
Shortly after Jack’s funeral, Gilmer’s daughter, Terri Weinmann, read in a newspaper article that Crestview had not had a licensed embalmer during July 2003. Weinmann showed the article to Gilmer, who became very upset. Gilmer testified that the idea that Jack’s body had been embalmed by someone who was not a licensed embalmer had affected her “very bad[ly].”
At her mother’s request, Weinmann contacted Crestview and spoke with Taul. Weinmann testified that Taul told her that Jack’s body had been embalmed by a licensed embalmer. Weinmann also testi- *589 fled that she asked Taul if he could provide her with documentation to verify that the person who embalmed Jack’s body had been licensed. A few days later, Wein-mann went to the funeral home, where she was given a copy of the embalming report prepared by Caldwell and a copy of Caldwell’s embalmer’s license. After she returned home, Weinmann noticed that, on the embalming report, the word “assistant” had been crossed out and the word “embalmer” had been written near Caldwell’s signature. Weinmann also noticed that the embalmer’s license did not show the date on which it had become effective. Weinmann contacted the Alabama Board of Funeral Service and was informed that Caldwell’s license had become effective on July 31, 2003, two weeks after Jack’s body had been embalmed.
Gilmer sued Crestview, Jones, Caldwell, and Taul (collectively “the defendants”), alleging claims of negligent or wanton conduct, suppression, breach of contract, and the tort of outrage. Gilmer later amended her complaint to add a negligent-supervision claim against Crestview and Jones, the owner and president of Crestview. The defendants filed a motion for a summary judgment, which was denied. They later moved the trial court to dismiss Gil-mer’s claims pursuant to Rule 12(b)(6), Ala. R. Civ. P. The trial court granted that motion, and Gilmer appealed.
In Gilmer I, this Court noted that, because the trial court had reviewed eviden-tiary submissions in reaching its decision on the motion to dismiss, “ ‘ “the motion [was] converted into a motion for summary judgment.” ’ ” 35 So.3d at 590 (quoting Robinson v. Benton, 842 So.2d 631, 634 (Ala.2002), quoting in turn Hornsby v. Sessions, 703 So.2d 932, 937-38 (Ala.1997)). This Court affirmed the summary judgment in favor of Jones on all the claims against him and in favor of Crestview on the negligent-supervision claim. The Court also affirmed the summary judgment in favor of the defendants on the negligent- and/or wanton-conduct claim but reversed the judgment as to the tort-of-outrage, suppression, and breach-of-contract claims against Crestview, Taul, and Caldwell. The Court then remanded the case to the trial court for further proceedings.
A jury trial began in May 2010. At the close of the evidence, Gilmer moved for a JML on the breach-of-contract and suppression claims. Taul and Caldwell moved for a JML on all the claims against them, and Crestview moved for a JML on the suppression and tort-of-outrage claims. The trial court granted Gilmer’s motion for a JML as to the breach-of-contract claim against Crestview, but it determined that the suppression and tort-of-outrage claims should go to the jury. Upon the joint motion of Gilmer, Taul, and Caldwell, the trial court dismissed Taul and Caldwell without prejudice before the case was submitted to the jury.
On May 14, 2010, the jury returned a verdict in Crestview’s favor on the tort-of-outrage claim and in Gilmer’s favor on the suppression claim. The jury awarded Gil-mer $350,000 in compensatory damages, which were jointly assessed with regard to both the breach-of-contract claim and the suppression claim. The jury also awarded $3 million in punitive damages with regard to the suppression claim.
The trial court entered a judgment on the jury’s verdict. Crestview renewed its motion for a JML or, in the alternative, it moved for a new trial. As a further alternative should the court deny its first motion, Crestview moved the trial court for a remittitur of both the compensatory damages and the punitive damages.
After a hearing, the trial court denied Crestview’s motion for a JML or a new *590 trial. The trial court also declined to reduce the compensatory-damages award but reduced the punitive-damages award to $1,050,000, pursuant to § 6-11-21 (a), Ala.Code 1975. Crestview now appeals.

Issues

Crestview argues that the trial court erred in denying its motion for a JML on the suppression claim and in entering a JML in Gilmer’s favor on the breach-of-contract claim. Crestview also argues that the compensatory-damages and punitive-damages awards were excessive and that the trial court erred in holding that the small-business cap on punitive damages provided in § 6 — 11—21(b), Ala.Code 1975, did not apply to the punitive-damages award.

Standard of Review

“ ‘When reviewing a ruling on a motion for a JML ..., this Court uses the same standard the trial court used initially in granting or denying a JML.... A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.
“ ‘Furthei’more, a jury verdict is presumed to be correct, and that presumption is strengthened by the trial court’s denial of a motion for a new trial. In reviewing a jury verdict, an appellate court must consider the evidence in the light most favorable to the prevailing party, and it will set aside the verdict only if it is plainly and palpably wrong.’ ”
Line v. Ventura, 38 So.3d 1, 7-8 (Ala.2009) (quoting Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999)) (citations omitted).

Analysis

Crestview first argues that the tidal court erred in denying its motion for a JML on the suppression claim. To prevail on this claim, Gilmer had to demonstrate: “(1) [that Crestview] had a duty to disclose an existing material fact; (2) [that Crest-view] concealed or suppressed that material fact; (3) [that Crestview’s] suppression induced [Gilmer] to act or refrain from acting; and (4) [that Gilmer] suffered actual damage as a proximate result.” Coilplus-Alabama, Inc. v. Vann, 53 So.3d 898, 909 (Ala.2010). Crestview argues that “[it] is entitled to a [JML] because Ms. Gilmer has failed to produce substantial evidence of [a] legal duty to disclose and reliance.” Crestview’s brief, at 18.
This Court has stated: “A party’s mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact. A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case.” Keck v. Dryvit Sys., Inc., 830 So.2d 1, 11 (Ala.2002) (citations omitted).
Crestview argues that there was no duty to disclose because “there was no confidential relationship between Ms. Gilmer and Crestview requiring [the] disclosure.” Crestview’s brief, at 19. However, Crest-view does not support this statement with citation to any relevant authority or provide any argument as to why this is so. Further, as noted previously, our cases have held that a duty to disclose can arise “from a confidential relationship ... or from the paiiicular circumstances of the *591 case.” Keck, 830 So.2d at 11 (emphasis added). Crestview makes no argument regarding Gilmer’s contention that a duty to disclose arose under the circumstances of this case.
“ ‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)). Crestview has not demonstrated that, as a matter of law, it had no duty to disclose to Gilmer that Groves, its only licensed embalmer, was on medical leave and that a licensed embalmer would not be hired to embalm Jack’s body. Therefore, in this regard, Crest-view has not demonstrated that it is entitled to a JML on the suppression claim.
Similarly, Crestview cites several facts that, it argues, demonstrate that Gilmer did not rely on the alleged suppression. However, it again fails to provide citations to relevant legal authority in support of its argument. Therefore, in this regard, Crestview has not demonstrated that it is entitled to a JML on the suppression claim. See Butler, supra.
Crestview also argues that “ ‘an action for suppression will lie only if the defendant actually knows of the fact alleged to be suppressed.’ Here, the evidence shows that the people who allegedly suppressed information from Ms. Gilmer did not actually know the facts which were allegedly suppressed.” Crestview’s brief, at 19 (quoting Coilplus-Alabama, Inc., 53 So.3d at 909).
The facts allegedly suppressed in this case are that the embalming would not be done “under applicable law”—specifically, “that Crestview’s only licensed embalmer was not available to embalm Jack Gil-mer’s body and that a licensed embalmer would not be contracted to embalm Jack Gilmer’s body.” Gilmer’s brief, at 18. Crestview makes several arguments to the effect that Taul and Caldwell did not “know” that allowing Taul to embalm Jack’s body violated applicable law. However, it does not argue that Taul and Caldwell were unaware that Groves would not be available to embalm Jack’s body. On the contrary, it is undisputed that Taul and Caldwell knew that Groves was on medical leave and, therefore, unavailable to embalm Jack’s body.
Moreover, although Caldwell testified that, at the time she provided Gilmer with the authorization, she did not know who would do the embalming, Caldwell’s testimony indicates that she knew that Taul, who was neither an apprentice nor a licensed embalmer, had been embalming bodies at Crestview’s funeral home and that he should not have been embalming bodies without a license. Caldwell further testified that she knew it was possible that, if she did not contract with a licensed embalmer, Taul would do the embalming of Jack’s body. Further, there is no testimony indicating that Caldwell or Taul made any effort to arrange for a licensed embalmer to embalm Jack’s body.
In light of these facts, we cannot say, as a matter of law, that Caldwell, who provided Gilmer with the authorization, did not know that the embalming of Jack’s body would be done in violation of applicable law. Therefore, Crestview has not demonstrated that it is entitled to a JML on the suppression claim.
Crestview next argues that it is entitled to a new trial because, it says, “the trial court erred by granting [a] [JML] to [Gilmer] on the breach of contract claim.” Crestview’s brief, at 24. “In order to recover for breach of an agreement, the *592 plaintiff must prove: (1) that the agreement existed; (2) that the defendant breached the agreement; and (3) that the plaintiff was damaged as a result of the breach.” Sokol v. Bruno’s, Inc., 527 So.2d 1245, 1247-48 (Ala.1988). Crestview does not dispute the existence or validity of the contract at issue here, the authorization, or that Gilmer has alleged a breach of that contract and damage resulting from the breach. However, Crestview does argue that it raised a question of fact as to whether the alleged breach was material under the circumstances of this case.
“A material breach is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract.” Sokol, 527 So.2d at 1248. The portion of the authorization at issue here is the requirement that the embalming be done by someone “allowed to perform such work under applicable law.” Presumably, the purpose of this requirement is to ensure that the embalming is done properly, so as “to preserve and to disinfect the body” and “to preserve and protect the body up until the time of the burial,” which, according to the undisputed testimony at trial, are the main purposes of embalming.
Gilmer does not argue that the embalming of Jack’s body was done improperly or that it did not serve its alleged purposes. She did testify that, on the night of the visitation, Jack’s body appeared to be swollen. However, she does not expressly argue that this indicates that the embalming was poorly done. Moreover, both Caldwell and Taul offered alternative explanations for the swelling. Caldwell testified that swelling is common among eye donors, which Jack was, and Taul testified that a body can sometimes appear swollen when it is lying flat. Taul further testified that he performed the embalming properly-
Viewing this evidence in the light most favorable to Crestview, we cannot say that Gilmer established as a matter of law that the alleged breach of the contract — i.e., the failure to have a licensed embalmer embalm Jack’s body — went to the “fundamental purposes of the contract [or] defeated] the object of the parties in making the contract.” Sokol, 527 So.2d at 1248. Therefore, because Crestview presented substantial evidence creating a question of fact requiring resolution by the jury as to the materiality of the alleged breach of the contract, the trial court erred in entering a JML in favor of Gilmer with regard to that claim.
Materiality is also an aspect to be considered- in a claim of suppression. See Coilplus-Alabama, Inc., 53 So.3d at 909 (“[T]he elements of fraudulent suppression ... are: (1) the defendant had a duty to disclose the existing material fact; [and] (2) the defendant concealed or suppressed that material fact.... ” (emphasis added)). We cannot determine what, if any, influence the trial court’s JML on the breach-of-contract claim had on the jury’s consideration of the suppression claim. Moreover, we are unable to determine from the lump-sum award of compensatory damages what damages were assessed with regard to the suppression claim and the breach-of-contract claim, respectively. Therefore, we must reverse the trial court’s judgment as to both claims and remand the case for a new trial on the suppression and breach-of-contract claims.[4]
REVERSED AND REMANDED WITH DIRECTIONS.
*593 MALONE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.

. This lump-sum award was not broken down between those two claims.

. Gilmer has not appealed the trial court's judgment in Crestview’s favor on the tort-of- *588 óutrage claim. Therefore, that claim is not before this Court.

. Taul eventually received his embalming license in 2006.

. Our decision to reverse the trial court’s judgment on these grounds pretermits consideration of Crestview’s arguments regarding the damages awards.