Bruce Sokol, d/b/a Max Sokol's Discount Furniture, filed suit against Bruno's, Inc., alleging breach of contract and fraud. Bruno's filed a motion for summary judgment on the fraud count, contending that it was barred by the then applicable one-year statute of limitations. (§ 6-2-39, Ala. Code 1975 (repealed).) Sokol agreed that summary judgment should be granted on the fraud count. His attorney stated the following on the record regarding the motion for summary judgment:
 "As we went through the discovery process it became clear to me that there was no actionable fraud that I could prove in this case against Bruno's. And through an agreement with Don [Bruno's counsel, Donald Broadway] that may or may not be on the record, and probably is not, I told Don — Don, you filed a motion for summary judgment on that count. And I would not oppose if you'll agree to strike — for us to strike the jury demand."
The trial court granted the summary judgment, but after it had done so, Sokol amended his complaint to state a second claim in fraud. Bruno's filed a motion to dismiss the amended complaint, which the court granted. Sokol then amended his complaint to include an allegation that the only reason he did not file the fraud complaint within the time allowed by the statute of limitations was conduct of Bruno's, that induced him to forgo filing a timely claim. Bruno's moved for a dismissal of this amendment also; Sokol filed a response to Bruno's motion to dismiss and filed a motion to strike the defense of the statute of limitations on the ground of estoppel. After hearing arguments on these motions, the trial court dismissed the amendment, and ruled that the case would be tried only on the contract count. After an ore tenus trial on the contract count, the court entered a judgment in favor of Bruno's, indicating simply that it was based upon Sokol's failure to meet his burden of proof.
 Facts
Sokol was in the retail furniture business in Birmingham from 1970 through April 1983, working either for his father or by himself. In March 1978, Sokol began looking for a location to open a retail furniture business. After several days, he located a building in a shopping area on Highway 78 in Birmingham. This building had formerly been used as a Bruno's supermarket, and a sublease was ultimately entered between Sokol and Bruno's on or about April 12, 1978. This sublease had an initial term of five years, with one five-year extension option. Several years before the execution of this sublease, a condemnation proceeding had been held involving the subject property. In the spring of 1981, Sokol learned for the first time that this condemnation proceeding had taken place and that as a result of these proceedings a fence was going to be erected directly behind his store. He learned this when he was advised one day by one of his drivers to go "out back"; behind the store he discovered a crew surveying a highway right-of-way line. One of the members of the crew informed him that a chain link fence was going to be erected as part of the interstate highway right-of-way system and indicated to Sokol where the fence would be located. The proposed fence would block access to Sokol's rear loading dock.
After talking to the survey crew, Sokol telephoned his attorney, Ed Meyerson, and Pat Bruno (the Bruno's leasing agent), to discuss the proposed fence. Sokol told Pat Bruno that a potential problem existed with the rear loading dock and that there had been a violation of the sublease. The first paragraph of the sublease contained the following provision:
 "At all times during the term of this Lease, and any extension hereof, Sublessor shall provide sublessee with access to its rear loading dock area for tractor-trailer truck deliveries."
There were no further discussions between Sokol and Bruno's in 1981. The furniture business continued to operate without incident until March 1982, when a representative of the State Highway Department *Page 1247 
knocked on Sokol's rear door to ask if the trash dumpster by the truck dock belonged to the furniture store. This person informed Sokol that the dumpster needed to be moved because a fence was going to be erected the next week. Shortly after this conversation, Sokol called his attorney. He also told Pat Bruno that he was concerned about the fence and that he did not see how he could operate his business without the use of the rear loading dock. According to Sokol, an officer of Bruno's, Joe Bruno, told him that "he thought that they could resolve the situation," and "not to worry," and that he (Joe Bruno), by and through Pat Vacca, the lawyer for Bruno's, "could take care of this problem," and, "assured me that he would do whatever was necessary to resolve this problem." Joe Bruno denies that this meeting ever took place. There was evidence that Pat Bruno expressed a positive attitude about the problem and told Sokol that Bruno's would attempt to obtain an easement or variance to relocate the fence and told Sokol that bruno's would find some other solution if the fence was not moved. At this time, a series of communications began between Ed Meyerson, Pat Bruno, Pat Vacca (general counsel for Bruno's), and the State Highway Department, concerning the fence. In January 1983, Meyerson learned that the request to change the location of the fence had been denied. The record does not reveal when the fence was actually erected. Later that month, Meyerson wrote Pat Bruno and informed him that Sokol did not intend to exercise his option to extend the lease for an additional five-year term. Sokol filed suit in March 1983 and closed the furniture store in April 1983.
 I
Sokol first contends that the trial court erred when it dismissed the amended fraud count. He argues that he presented evidence that Bruno's was precluded from pleading the statute of limitations because Bruno's had, through its representations, induced him not to file suit within the time allowed. Bruno's contends that Sokol consented to the summary judgment on the fraud count and should be bound by it.
We are of the opinion that the trial court correctly dismissed the amended fraud count. It is clear from the record that the trial court had granted the summary judgment with Sokol's consent. The attorneys for both parties discussed the fraud count and Sokol's attorney stated that he would not oppose the summary judgment. This Court, in City of Bessemer v.Brantley, 258 Ala. 675, 65 So.2d 160 (1953), stated:
 "The appellee cross assigns as error the action of the trial court in reducing the verdict of the jury from $7,000 to $2,000. The judgment entry discloses that the reduction was made with the consent of the appellee. A party cannot appeal from a judgment to which he has consented." (Emphasis added.)
258 Ala. at 682, 65 So.2d at 166.
Because the amended fraud count was simply a restatement of the claim alleged in the original fraud count, on which summary judgment had been granted by consent, the trial court correctly dismissed the amended fraud count. City of Bessemer v.Brantley, supra.
 II
Sokol also contends that the trial court's finding that he failed to satisfy his burden of proof on the contract count (i.e., the alleged breach of the sublease agreement) is unsupported by the evidence and is, therefore, plainly and palpably wrong.
The trial court held a trial on the contract count, at which it heard ore tenus evidence. When a trial court hears ore tenus evidence, every presumption will be indulged in favor of its findings and its findings will not be disturbed on appeal unless they are plainly and palpably wrong. Etheridge v.Yeager, 465 So.2d 378 (Ala. 1985). When, as in this case, the court states no specific findings of fact, this Court will assume that the court made those factual findings necessary to support its judgment. Thomas v. Davis, 410 So.2d 889 (Ala. 1982).
In order to recover for breach of an agreement, the plaintiff must prove: (1) *Page 1248 
that the agreement existed; (2) that the defendant breached the agreement; and (3) that the plaintiff was damaged as a result of the breach. Cocke v. Odom, 385 So.2d 1321 (Ala.Civ.App. 1980).
It is undisputed that there was a sublease agreement. Sokol had the burden of proving that Bruno's failed to perform under that sublease. Sokol admits that there was a conflict in the evidence as to this question. The record shows that Bruno's also suggested alternatives by which Sokol, with what the trial judge could have determined would have been a reasonable effort, could have avoided the alleged harm without undue risk or expense. Bruno's produced evidence not only that the alternatives, including the construction of an alternative rear loading dock that would not be blocked, were functional, but also that it had agreed to pay for all expenses in connection with the alternatives. Sokol testified, for example, that he could have received inventory by using the alternatives, with just a little inconvenience.
In view of the evidence that Bruno's offered to provide an alternative rear loading dock, we conclude that the evidence would have supported the conclusion that there was not a material breach of the contract provisions. We are mindful of the law regarding a material breach of a contract. A material breach is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract. Rogers v. Relyea, 184 Mont. 1, 601 P.2d 37 (1979). We hold that the trial judge was authorized to find, as a matter of fact, that there was not a material breach of the contract. Such a finding would support the judgment.
Assuming, however, that there had been a breach, Sokol had the burden of proving that he was damaged because of that breach. Sokol submitted evidence that the denial of access to the rear loading dock kept him from receiving and shipping new merchandise. He also presented evidence that without access to the rear loading dock he could not operate the furniture store. As we have already noted, however, Bruno's presented evidence that it had suggested feasible alternatives to the use of this loading dock and that it had offered to pay all expenses incurred in the use of these alternatives, but that Sokol refused to accept these alternatives. For example, Bruno's offered to build a loading dock that would not be blocked by the fence so that furniture could be unloaded at the rear of the building and the rear door to the building could be used. Sokol refused to accept Bruno's offer. Therefore, the evidence would support a finding that — even if there had been a material breach of the sublease — the plaintiff incurred no damages as a result of that breach, but that any losses incurred were the result of the plaintiff's own refusal to accept a reasonable alternative performance. It is clear that a party may not recover losses that he might have prevented by reasonable efforts. Bradford v. Sloan Paper Co., 383 F. Supp. 1157
(N.D.Ala. 1974).
In summary, the trial court could have found that Sokol failed to prove the breach of contract; or, if there was a material breach, that he failed to prove that he suffered any damages resulting from the defendant's breach. The evidence would support either finding and either finding would support the judgment.
The parties hotly contest evidentiary issues relating to Bruno's attempt to prove that Sokol failed to mitigate damages. Our holding in this case makes a discussion of these issues unnecessary.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and BEATTY and HOUSTON, JJ., concur.
ALMON, J., concurs in the result. *Page 1249