Shelia Rae Hendrix Shonkwiler and Frank David Kriska were divorced on June 12, 1996. Pursuant to an agreement of the parties incorporated into the divorce judgment, the court awarded the mother custody of the parties' two minor children, with specified visitation to the father. In May 1999, the father petitioned the court to modify the judgment, arguing that it would be in the best interests of the children to be immediately placed in his custody. He also moved for an ex parte order, alleging that the mother had changed residences at least 20 times during the past 4 years and that she had left the state with the children from April 1997 through April 1998 and had denied him visitation rights. In June 1999, the father moved for a rule nisi, asking that the mother be found in contempt.
The court, on June 22, 1999, entered an order awarding the father temporary custody of the children; ordering law-enforcement officials to provide assistance to the father in obtaining physical custody of the children; and denying visitation rights to the mother. The father filed several motions, including a writ of habeas corpus, requesting the court to order that the children be brought before the court and seeking a pick-up order directed to the State of Ohio; the court issued a pick-up order in July 1999, allowing the father to obtain custody of the children from the mother's residence in Ashland, Ohio. The record indicates that the father, through the assistance of the police department in Ashland, obtained custody of the children. The mother immediately moved for an ex parte order to have the children returned to her custody. She answered the father's petition and motions and counterclaimed for a rule nisi, arguing that the father should be held in contempt because of a $10,810 child-support arrearage she said he owed her.
Following an ore tenus proceeding, the court, on August 11, 1999, entered an order finding the mother in contempt and sentencing her to 30 days in jail for six willful violations of the court's prior orders. The August 11 order stated, in part:
 "The Court issued an order on May 17, 1999, that restrained the [mother] from leaving the State of Alabama with the parties' minor children. The pleadings filed by the [father] and that Order were served on [the mother] that afternoon. In willful defiance of that Order, the [mother] left Alabama with the parties' children on the evening of May 17 and went to Ashland, Ohio. The [mother] further willfully prevented the [father] from having visitation with the children during the weekends beginning May 21, June 4, June 18, and July 2, 1999. She also hid the children from him which prevented him from beginning his extended summer visit on July 15, 1999. The Court is satisfied that the [mother] on many other occasions changed the residence of the children without notifying the [father] and thereby deprived him of visitation and association with them. However, the dates of those visitation denials are not specific enough for the Court to make findings of contempt. To assure the [mother's] future compliance with the Court's Orders pertaining to the parties' children, it is necessary that she be required to post an indemnity bond with the Clerk of the Court.
 "The Court is further satisfied from the evidence that the best interests of the children will be served temporarily by their remaining in the legal and physical custody of the [father].
"Accordingly, it is ORDERED by the Court as follows:
 "1. The [father] shall have the temporary legal and physical custody of the parties' minor children. *Page 705 
 "2. Upon posting with the Circuit Court Clerk a cash or surety bond in the amount of $2,500.00, payable to the [father] and conditioned upon the [mother's] faithful compliance with the Orders contained herein, the [mother] shall be entitled to visit and associate with the parties' children only in the State of Alabama at the times and occasions set forth in the visitation schedule made a part of the parties' divorce settlement agreement.
 "3. Neither the [father] nor the [mother] shall remove the children from the State of Alabama for any purpose without the written consent of the other party or the written authorization of the Court.
 "4. The [mother] shall not be obligated to pay the [father] child support at the present time.
". . . .
 "7. The [mother] is adjudged in contempt of court for her six (6) willful violations of the prior Orders entered in this case. She is sentenced to serve 30 days' incarceration in the Morgan County Jail. Her visitation rights set forth above in this Order are suspended during the 30 days that she is jailed. Whether or not financial sanctions should be assessed against the [mother] for her contempt is reserved for future determination.
 "8. The issue of the [father's] alleged contempt for failing to pay child support is reserved and will be considered during the trial on the merits of the [father's] Petition to Modify and the [mother's] Counterclaim for Rule Nisi."
The mother appealed, arguing that the court abused its discretion in finding her in contempt and that it violated § 12-11-30(5), Ala. Code 1975, by imposing the 30-day sentence.
Section 12-11-30(5) states:
 "(5) CONTEMPTS. — The circuit court may punish contempts by fines not exceeding one hundred dollars ($100) and by imprisonment not exceeding five days. The power of the circuit court to enforce its orders and judgments by determinations of civil contempt shall be unaffected by this section."
This court has jurisdiction to hear an appeal from a finding of contempt — criminal or civil — if the finding of contempt arises out of a domestic-relations case. Tetter v. State, 358 So.2d 1046
(Ala. 1978). In the present case, the May 17, 1999, order barred the mother from leaving the state with the children; the mother violated the order the same day. The children were returned to the father by way of a pick-up order. The court found the mother in contempt for 6 "willful violations" of its prior orders and sentenced her to 30 days in jail.
In 1994, our supreme court adopted Rule 70A, Ala.R.Civ.P., defining criminal and civil contempt arising out of civil actions. Civil contempt is the willful, continuing failure or refusal to comply with a court's lawful order that by its nature is still capable of being complied with. Rule 70A(a)(2)(D); Chestang v. Chestang,769 So.2d 294 (Ala. 2000) (trial court's contempt order made a finding of civil contempt where owner of servient tenement continued to interfere with use of easement by owner of dominant tenement and fines levied were compensatory in nature and not punitive).
Rule 70A(a)(2)(C) defines two categories of criminal contempt: (i) misconduct in the court's presence or "so near thereto as to interrupt, disturb, or hinder" the proceedings and (ii) willful disobedience to a court's order "where the dominant purpose of the finding of contempt is to punish the contemnor." Obviously, the first category of criminal contempt is not applicable in this case; it is the second category of criminal contempt that is at issue. It is clear that the court was attempting to punish the mother for her six "willful violations." *Page 706 
Absent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court. Shellhouse v. Bentley, 690 So.2d 401
(Ala.Civ.App. 1997). A party may be punished for criminal contempt of court only upon an adjudication based upon proof of guilt beyond a reasonable doubt. Ex parte J.R.W., 667 So.2d 88 (Ala. 1995).
There was ample evidence to support the trial court's finding that the mother had been properly served with notice of its May 1999 order restraining her from leaving the state with the children "for any purpose and [from] hid[ing], conceal[ing] or secret[ing] the whereabouts of said children from the [father] or the Court." The mother did leave the state with the children, in violation of the court's order, and, consequently, interfered with the father's visitation rights. The trial court specifically found that the mother had changed the residence of the children on several occasions and did not notify the father and that she had hidden the children from the father, preventing him from exercising his lawful visitation.
The dispositive issue is whether the court had the authority to impose a five-day sentence for each of the six instances that it cited in which the mother had denied visitation to the father. This court has previously addressed the issue of contempt in domestic cases. In Hollisv. State ex rel. Hollis, 618 So.2d 1350 (Ala.Civ.App. 1992), we reversed that portion of the trial court's judgment sentencing the husband to "five days in jail for 209 instances of contempt for a total of 1,045 days," stating, in part: "Assuming that the husband's failure to comply with the judgment of divorce was contemptuous, the appropriate sentence in this case would have been no more than a five-day jail sentence for the one finding of contempt." Id. at 1351. We compared the facts inHollis to our previous holding in Norland v. Tanner, 563 So.2d 1055
(Ala.Civ.App. 1990), stating:
 "In Norland, `[t]he trial court expressly found the mother in contempt of court "on two separate distinct occasions" and ordered her to serve a five-day sentence for each of the two "separate distinct violations."' Norland at 1057. In this case, the trial court found Hollis to be in contempt of court one time `regarding child support.' However, as `punishment for said contempt,' the trial court later sentenced Hollis for 209 `instances of contempt.' . . . The record . . . does not reveal how the trial court reached the number `209.' . . . Again, the trial court did not find Hollis in contempt of court for each time he failed to make a child support payment. Hollis was found to be in contempt of court one time; therefore, this case does not conflict with Norland, but, instead, it follows the rationale of Norland, in that the trial court must make a separate and distinct finding of contempt for each five-day sentence imposed."
Hollis, 618 So.2d at 1352.
In Lowe v. Lowe, 561 So.2d 240 (Ala.Civ.App. 1990), this court addressed the issue whether a 30-day sentence for contempt exceeded the court's authority. We reversed the court's judgment, stating, in part:
 "The judgment of contempt stated that [the husband] shall be imprisoned for thirty days for the `many separate and distinct prohibited telephone contacts.' Thus, while the trial court's order states `separate and distinct,' it is unclear exactly how many violations [the husband] is being punished for, and how many days of imprisonment are being meted out per violation. Without a specific number of separate citations of contempt, based upon the evidence, we cannot ascertain whether the trial court exceeded the limitation upon its power to punish for contempt under § 12-11-30(5). Additionally, without specific *Page 707 
findings, we are unable to review the judgment for excessiveness."
Id. at 242; see also K.T.W.P. v. D.R.W., 721 So.2d 699 (Ala.Civ.App. 1998).
After thoroughly reviewing the record, we conclude that the court did not abuse its discretion in finding the mother in contempt and giving her a 5-day sentence for each of the 6 violations, for a total of 30 days. The court stated in its order that although the mother had, on many other occasions, denied the father visitation, "the dates of those visitation denials are not specific enough for the Court to make findings of contempt." It did, however, specifically identify the mother's willful violation of its May 1999 order restraining her from leaving the state with the children and it specifically identified the dates she had denied visitation. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
Robertson, P.J., and Monroe, Crawley, and Thompson, JJ., concur.