PER CURIAM.
Lisa M. Preston (“the mother”) appeals from a judgment of the Morgan Circuit Court (“the trial court”) that found her guilty of 5 counts of criminal contempt of court and sentenced her to 5 days of incarceration for each of the 5 separate acts of contempt, or a total of 25 days of incarceration; that sentence was stayed pending this appeal.
The mother and Matthew A. Saab (“the father”) were divorced by an Alaska court in 1997. One child was born of the parties’ marriage, a boy, born in November 1995. *597 Pursuant to the parties’ divorce judgment, the mother was awarded physical custody of the child and the father was awarded unspecified visitation with the child.[1] In May 2005, the trial court entered an order modifying the parties’ divorce judgment (“the 2005 order”). The 2005 order stated, in pertinent part: “The [mother] is ordered to use only the name SAAB when listing the ... child’s last name on his sport jerseys as well as any documents relating to the child. The last name Preston shall not be used in reference to the ... child.” (Capitalization in original.)
On July 2, 2008, the father filed a petition requesting that the trial court find the mother in contempt of court. The father alleged that the mother had continued to allow the child to use the last name “Preston” in violation of the 2005 order. The father also alleged that the mother had refused to allow the father reasonable telephone access to the child. The mother was served with the father’s petition on July 23, 2008. The mother answered the father’s petition and alleged that the child, on his own volition, had decided to keep the last name “Preston” and that the name the child chose to use was “largely beyond [the] mother’s control.”
The trial court held an ore tenus hearing on December 10 and December 11, 2008. The trial court heard testimony from the father, the father’s wife, and the mother. At the time of the final hearing, the father and the father’s wife lived in Missouri and the mother and the child, who was 13 years old at that time, lived with the mother’s husband in Hartselle. The father testified that the name “Preston” was still being used in reference to the child despite the 2005 order that required the use of the name “Saab.” The father produced the child’s 2008 baseball registration form, signed by the mother and the child, which stated that the child’s last name was “Preston.”
The father testified that he had previously had a difficult time contacting the child on the telephone. The father stated that, on one occasion, he left a message for the mother threatening to call the police so that they could perform a welfare check on the child if the mother did not return the father’s telephone call. However, the father testified that, since that occasion, he had changed cellular-telephone providers so that he and the child were on the same cellular-telephone network. The father further stated that, at the time of the final hearing, he was able to talk to the child on a daily basis. During the final hearing, the father’s attorney stated that the father was not seeking to hold the mother in contempt regarding his lack of telephone contact with the child because that situation had been remedied.
The child visited the father in Missouri during the 2008 Thanksgiving holiday. Marilyn Saab, the father’s wife, testified that during that visitation she noticed that the name “Preston” was written on the tag of the child’s clothing. The father’s wife stated that she was familiar with the child’s handwriting and that it was not the child’s handwriting on the clothing tag. The father’s wife also noticed that the child had a magazine subscription using the last name “Preston.” The father’s wife further testified that she had obtained a roster of the child’s baseball team, which showed that the child was listed with the name “Preston.” The mother later testified that the baseball roster that the father’s wife identified was from the child’s 2005 baseball season and that the child had registered for baseball in February 2005, before the trial court entered the 2005 order.
*598 The mother testified that, between the time the child was 10 months old and approximately 9 years old, the father had seen the child 1 time for 4 hours. The mother married Chuck Preston when the child was six years old, and the mother stated that her husband had been the child’s father figure. The mother stated that the child referred to both the father and her husband as “dad.” According to the mother, shortly after she married Chuck Preston the child asked her if he could use the last name “Preston” instead of “Saab.” The mother stated that she discussed the possibility of changing the child’s name with the father and that the father decided that he did not want the child’s name to be changed.
The mother testified that the child’s school and medical records used the last name “Saab.” The mother admitted that she had registered the child for baseball in 2008 using the last name “Preston.” During her testimony, the mother identified a roster from the child’s 2008 baseball season in which the child was listed with the last name “Preston.” She stated that the child had used the name “Preston” when he first registered for baseball, approximately seven years earlier, so all the child’s previous baseball records were under the name “Preston.” The mother admitted that she could have changed the child’s name with the baseball league at any time but that she chose not to do so. The mother also admitted that she had let the child decide which last name he wanted to use and that she had never forced him to use the name “Saab.” The mother claimed that she had tried to encourage a positive relationship between the child and the father, but she also admitted that she had allowed the child to continue to use the name “Preston” rather than “Saab,” in contravention of the 2005 order of the trial court.
The mother testified that the child told his friends and his baseball coaches that his last name was “Preston.” The father testified that the child used the last name “Saab” whenever he was around the father. Apparently, the child’s baseball jersey had his first name on the back of the jersey instead of “Saab” or “Preston.” The father stated that the child was clearly conflicted and that it was apparent that the child did not want to hurt the father or the mother.
The trial court issued a final judgment on April 6, 2009, that found the mother guilty of four counts of criminal contempt for refusing to obey the 2005 order. Specifically, the trial court found the mother in criminal contempt based on evidence demonstrating that: (1) the mother had registered the child for baseball in 2008 using the last name “Preston”; (2) the mother had allowed the child’s name to be listed as “Preston” on the child’s 2008 baseball roster; (3) the mother had authorized a magazine subscription for the child using the last name “Preston”; and (4) the mother had written the last name “Preston” on some of the child’s clothing. The trial court also found the mother guilty of criminal contempt for violating a provision of the parties’ original divorce judgment awarding the father reasonable telephone contact with the child. The trial court sentenced the mother to serve five days in the custody of the Morgan County Sheriff for each of the five specified acts of contempt. The trial court denied all other relief requested, and the mother timely appealed.
On appeal, the mother argues that the trial court erred by: (1) admitting, over the mother’s objections, the child’s 2008 baseball registration form and the child’s 2005 baseball roster; (2) finding the mother guilty of four counts of criminal contempt for violating the 2005 order; (3) *599 finding the mother guilty of one count of criminal contempt for violating the parties’ divorce judgment; (4) imposing a jail sentence on the mother in violation of her due-process rights; and (5) imposing a jail sentence on the mother against the father’s wishes.
Initially, we note that the mother has failed to set forth an argument addressing her first issue on appeal other than to set forth the issue in the “Statement of the Issues” section of her brief. Therefore, we will not address whether the trial court erred by admitting the child’s 2008 baseball registration form or the child’s 2005 baseball roster. See Rule 28(a)(10), Ala. R.App. P.; and Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (“ ‘[I]t is not the function of [an appellate] Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))).
The mother next argues that the trial court erred in finding her guilty of four counts of criminal contempt for violating the 2005 order.
“Rule 70A, Ala. R. Civ. P., governs contempt proceedings that arise out of civil actions. Rule 70A(a)(2)(C)(ii) defines criminal contempt as ‘[w]illful disobedience or resistance of any person to a court’s lawful ... order, rule, or command, where the dominant purpose of the finding of contempt is to punish the eontemnor.’ In order to establish that a party is in criminal contempt of a court order, a contempt petitioner must prove beyond a reasonable doubt that the party against whom they are seeking a finding of contempt was subject to a ‘ “lawful order of reasonable specificity,” ’ that the party violated that order, and that the party’s violation of the order was willful. Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001) (quoting United States v. Turner, 812 F.2d 1552, 1563 (11th Cir.1987)).”
L.A. v. R.H., 929 So.2d 1018, 1019 (Ala.Civ.App.2005). Furthermore, we have held that, “[a]bsent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly or palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court.” Shonkwiler v. Kriska, 780 So.2d 703, 706 (Ala.Civ.App.2000).
The mother does not argue that the 2005 order was not lawful or that the 2005 order was not reasonably specific; instead, she argues that the father did not prove beyond a reasonable doubt that she willfully violated the 2005 order. However, at the final hearing the mother admitted that she had registered the child for baseball in 2008 using the last name “Preston.” The mother also admitted that she had allowed the child to be listed on the 2008 roster of the child’s baseball team using the last name “Preston.” The mother also conceded that she knew that she could change the child’s name on the baseball roster at any time but that she chose not to do so.
The mother argues that the circumstances of this case are similar to the circumstances in Shellhouse v. Bentley, 690 So.2d 401 (Ala.Civ.App.1997). In Shellhouse, this court reversed a trial court’s judgment that held a father in criminal contempt for his 15-year-old child’s refusal to visit the child’s mother. Id. at 403-04. However, in that case, the father had consistently made the child available for visitation but, when the father took the child to meet the mother, the child refused to leave the father’s vehicle without physical force. Id. at 402-03. *600 Our conclusion in Shellhouse was based on the fact that there was no evidence indicating that the father had acted willfully or intentionally in violating the court’s order. Id. We find the present case distinguishable from Shellhouse because there was ample evidence indicating that the mother had acted willfully and intentionally in violating the 2005 order by registering the child for baseball in 2008 using the last name “Preston” and by allowing the child to use the last name “Preston” on his baseball roster. Therefore, we conclude that there was evidence demonstrating, beyond a reasonable doubt, that the mother violated the 2005 order in these two instances and that the violations were willful. Accordingly, we affirm the trial court’s judgment insofar as it held the mother in criminal contempt for registering the child for baseball in 2008 using the last name “Preston” and for allowing the child to use the last name “Preston” on his baseball roster.
However, there was little evidence submitted at the final hearing to support the trial court’s findings of criminal contempt regarding the mother’s writing the last name “Preston” in the child’s clothing and the mother’s authorizing a magazine subscription for the child using the last name “Preston.” In fact, the only evidence submitted by the father to support those findings was limited to the father’s wife’s testimony that she saw the last name “Preston” written in the child’s clothing and that she saw a magazine that was sent to the child using the last name “Preston.” The trial court’s inference that the mother wrote the name “Preston” on the child’s clothing is based on the father’s wife’s testimony that the name “Preston” on the child’s clothing was not written in the child’s handwriting. There was no evidence indicating that the mother had authorized a magazine subscription for the child using the last name “Preston.” Based on this evidence alone, we cannot conclude the father met his burden of proving beyond a reasonable doubt that the mother willfully violated the 2005 order by writing “Preston” in the child’s clothing or by authorizing a magazine subscription for the child using the last name “Preston.” Therefore, we conclude that the trial court’s judgment was unsupported by the evidence and is due to be reversed insofar as it concluded that the mother was guilty of criminal contempt in these two instances. See Shonkwiler v. Kriska, 780 So.2d at 706.
The mother next argues that the trial court erred in finding her guilty of criminal contempt for failing to allow reasonable telephone contact between the child and the father in violation of the parties’ original divorce judgment. The mother argues that the father did not seek a finding of contempt regarding telephone contact with the child, and, further, she asserts that the father failed to submit, on the record, any order requiring the mother to make the child available for reasonable telephone contact with the father. Our review of the record on appeal reveals that there is no order in the record requiring the mother to allow reasonable telephone contact between the father and the child. During the final hearing, the trial court attempted to determine whether the parties’ divorce judgment contained a provision regarding the father’s right to reasonable telephone contact with the child. The father testified that an order regarding his right to reasonable telephone contact “may” have existed somewhere. Suffice it to say that the record is unclear as to whether the mother was subject to such an order. Based on the record before us, we conclude that the trial court erred in finding the mother guilty of criminal contempt for failing to make the child available for *601 reasonable telephone contact with the father because the father failed to show beyond a reasonable doubt that the mother was subject to a lawful order of reasonable specificity directing the mother to do so. See L.A. v. R.H., supra. Because we reverse the trial court’s finding of criminal contempt as to this issue based on the father’s failure to meet his burden of proof, we pretermit discussion of the mother’s remaining arguments regarding this finding of criminal contempt.
The mother next argues that the jail sentence imposed was so severe that it constituted a violation of her due-process rights. First, we note that there is no indication that the mother raised this issue before the trial court. It is well settled that an appellate court will not review an issue on appeal that was not first presented to the trial court. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). Furthermore, in support of her argument, the mother cites only Shellhouse v. Bentley, supra, for the proposition that it is a violation of a parent’s due-process rights to hold the parent in criminal contempt for a child’s failure to adhere to an order of the trial court. However, as discussed above, the present case is distinguishable from Shellhouse because the mother unequivocally admitted that she had acquiesced to the violation of the 2005 order by allowing the child to use whichever last name he chose. Cf. L.A. v. R.H., 929 So.2d at 1019 (affirming a finding of criminal contempt against a mother who did not “actively participate in the decision to deny the grandparents visitation” but who “ ‘passive[ly] accepted’ ” her husband’s decision to deny grandparent visitation). Although we believe that the mother’s jail sentence was particularly harsh in light of the circumstances of this case, we cannot conclude that the trial court exceeded its discretion in sentencing the mother to five days in jail for each finding of criminal contempt. See Ala.Code 1975, § 12-11-30(5) (permitting punishment for contempt by imprisonment not to exceed 5 days). Thus, we conclude that the mother has failed to demonstrate that the sentence imposed by the trial court violated her due-process rights.
Finally, the mother argues that the trial court erred by imposing a jail sentence against her despite the fact that the father specifically stated on the record that he did not want the mother to be incarcerated. In Fludd v. Gibbs, 817 So.2d 711, 714 (Ala.Civ.App.2001), this court held that “[a] finding of criminal contempt is appropriate where a party has shown disobedience to a court’s order and where the acts complained of were specific, identifiable violations from the past.” In Fludd, the husband filed a petition seeking to hold the wife in contempt, and the husband specifically asked the trial court to incarcerate the wife. Id. The wife argued on appeal that the husband had not wanted her to be incarcerated. Id. This court noted the inconsistency of the wife’s argument and further stated that the wife’s argument was “irrelevant, because the wife’s actions were a violation of the trial court’s authority....” Id. In the present case, the trial court noted on the record that the 2005 order was “very clear” and that it was the mother’s responsibility to obey the 2005 order. Therefore, as we did in Fludd, we conclude that the father’s wishes regarding the incarceration of the mother were irrelevant to the court’s imposition of a jail sentence. Accordingly, we conclude the trial court’s imposition of a five-day sentence for each finding of criminal contempt, as modified by this *602 opinion, was proper. See Ala.Code 1975, § 12-11-30(5); and Shonkwiler v. Kriska, supra (holding that a trial court had the authority to impose a five-day sentence for each of six instances that it found the former wife guilty of criminal contempt of court).
Based on the foregoing analysis, we reverse the judgment of the trial court insofar as it found the mother guilty of criminal contempt for writing the name “Preston” in the child’s clothing, for authorizing a magazine subscription for the child using the name “Preston,” and for failing to make the child available for reasonable telephone contact with the father. We also reverse the trial court’s imposition of a five-day jail sentence for each of the three findings of criminal contempt that have been reversed. We affirm the trial court’s judgment insofar as it found the wife guilty of criminal contempt for registering the child for baseball in 2008 using the last name “Preston” and for allowing the child’s 2008 baseball roster to list the child’s last name as “Preston,” and we affirm the trial court’s imposition of a five-day jail sentence for each of the findings of criminal contempt that have been affirmed.
The father’s request for an attorney’s fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the judges concur.

. The parties' divorce judgment is not included in the record on appeal.