THOMPSON, Presiding Judge.
C.N.M. ("the mother") appeals from a July 13, 2017, judgment of the Madison Juvenile Court ("the juvenile court") finding her in contempt. In addition to sentencing the mother to five days in jail for the conduct made the basis of this action, the juvenile court also revoked the suspension of jail time imposed as a result of earlier acts of contempt the mother committed.
The record before us tends to demonstrate the following facts relevant to the issues on appeal. On February 21, 2013, the juvenile court entered a judgment ("the February 2013 judgment") adjudicating J.D.D. ("the father") the father of the mother's two children ("the children"). A copy of that judgment is included in the record on appeal. The parties reached an agreement on the issues of visitation, custody, and support, and that agreement was incorporated into the February 2013 judgment. Pursuant to that agreement, the parties had "joint care, custody and control" of the children. The judgment stated that the mother "shall be the primary custodial parent" and that the father "shall be the secondary custodial parent."[1] The father was awarded standard visitation rights, which, the judgment stated, was to be considered "a minimum" amount of visitation.
Although we cannot discern the specific date from the record, a few years after the February 2013 judgment was entered the father filed an action in the juvenile court alleging that the mother was not allowing him to exercise his visitation rights. On December 1, 2016, after a hearing on the father's allegations, the juvenile court entered an order of contempt. Although the December 1, 2016, order is not included in the record on appeal, in the proceedings below, the juvenile-court judge noted from the bench that no one had provided him with a copy of the December 1, 2016, order but that he had had it copied from the court record. The July 13, 2017, judgment from which the mother now appeals indicates that, in the December 1, 2016, order, the juvenile court found the mother's actions "to be 'willful, blatant, contemptuous' " and that " 'beyond a reasonable doubt' [she] had violated the terms of the this Court's order of February 21, 2013, in that the mother refused to allow the father ... to exercise his rights of holiday visitation with the parties' minor children." In the December 1, 2016, order, the juvenile court noted in the July 13, 2017, judgment from which the mother now appeals, the mother was found to have committed at least 21 separate acts of criminal contempt. She was sentenced to 5 days in jail for each of the 21 acts. The sentences were to run consecutively for a total of 105 days in jail. The juvenile court stated that the December 1, 2016, order suspended the sentences for two years on the condition that the mother comply "fully, completely, and faithfully" with the juvenile court's orders.
In addition to setting conditions for the jail sentences, the juvenile court wrote in the July 13, 2017, judgment appealed from in the instant appeal, the December 1, 2016, order also directed the mother to allow the father to have "make-up visitation." Specifically, the December 1, 2016, order directed that the father was to have visitation during the 2016 Thanksgiving *350 holiday and during spring break 2017.[2] The December 1, 2016, order reserved ruling on all additional pending matters for a hearing later that month.
On December 19, 2016, after the hearing, a judgment was entered denying the father's request for custody of the children, saying that he had failed to present sufficient evidence to meet the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984). However, the juvenile court continued, there was sufficient evidence presented to warrant a modification of the father's child-support obligation and to modify each party's authority for the ultimate responsibility over certain designated aspects of the children's upbringing, such as education, religion, and athletics. The December 19, 2016, judgment also limited the contact the children could have with the mother's boyfriend, among other things not relevant to this appeal. The December 19, 2016, judgment further specified that the father's visitation rights would be those specified in the "Court's Custodial Schedule," attached as an exhibit to that judgment. That schedule is what is also known as a standard visitation schedule.[3] The schedule provided that the father was to have visitation with the children during spring break in even-numbered years and that the mother was to have custody of the children during spring break in odd-numbered years. The December 19, 2016, judgment also specified that "all other provisions of this Court's previous order and contempt order entered on November 10, 2016 [actually entered on December 1, 2016], not specifically modified herein, remain in full force and effect."
On March 16, 2017, the father filed a rule nisi petition asking the mother to show cause why she should not be held in contempt for refusing to allow the father to exercise his spring-break visitation in 2017 as ordered in the December 1, 2016, order. The father also sought a modification of custody and child support. In turn, the mother filed a rule nisi petition regarding a conflict over the children's health insurance. She also sought to have the father's visitation schedule modified and his child-support obligation recalculated.
A guardian ad litem was appointed for the children. An evidentiary hearing was held on July 7, 2017. Evidence regarding the mother's alleged contempt tended to show the following. There is no question that the father exercised his Thanksgiving 2016 visitation. Furthermore, the mother does not dispute that she did not allow the father to exercise visitation during spring break 2017. The father testified that he contacted the mother about exercising his "make-up" visitation with the children during spring break 2017. The mother responded that he would not have the children until spring break 2018. In a text message, the mother told the father that, "being this is 2017, an odd year, makes it my year to have the [children]. You being the noncustodial parent makes you have spring break on even years. So I will have them this year." The father responded by telling the mother that there should be no confusion as to this matter and for her to "read your order." The father testified that the mother persisted in saying that he would not have visitation with the children during spring break 2017.
*351 The mother testified that she understood that the December 1, 2016, order finding her in contempt had awarded the father "make-up time" for visitation. She said that those times were Thanksgiving 2016 and spring break 2017. In explaining why she did not allow the father to exercise the spring-break make-up visitation, the mother testified that the December 19, 2016, judgment, to which the court's standard visitation order was attached, "took away" the make-up visitation. She said: "From my reading of the [December 19, 2016,] order it stated that he would have [the children] spring break of 2018, and from my understanding I was supposed to follow the final [December 19, 2016,] order."
The juvenile court questioned the mother at length about her decision not to allow the father to exercise his make-up visitation during spring break 2017. The juvenile court asked the mother whether she had looked at the December 1, 2016, order after the father had told her he was going to exercise his make-up visitation during spring break 2017. The mother said that she had not done so. The mother also testified that, on the Friday when spring break began, she picked up the children from school before the father could arrive at the school to pick them up. The mother said that the children stayed with her for a few days and then went to New Orleans with their grandfather during their spring break. The juvenile court also clarified with the mother that she had sent the children off with another relative, and without her, during that spring break rather than allow the father to exercise his court-ordered make-up visitation. In a discussion held on the record with the mother's attorney, the mother's attorney acknowledged that nowhere in the December 19, 2016, judgment was the father's make-up visitation canceled and that, in fact, it contained a provision stating that provisions in the December 1, 2016, order "not specifically modified herein remain in full force and effect."
On July 13, 2017, the juvenile court entered a judgment that, among other things, found that the mother had "willfully, blatantly, and contemptuously gone beyond the direction of the Court's orders, which were clearly set out and were not confusing." The juvenile court also found that the mother did not seek legal advice regarding the make-up visitation and, instead, "proceeded on her own" to deny the father the make-up visitation ordered for spring break 2017. Accordingly, the juvenile court held the mother in contempt. The juvenile court imposed an additional 5 days to the mother's previous sentences for contempt, for a total of 110 days in jail, and implemented the suspended sentences. The mother was ordered to serve her sentences over the weekends.
In her brief on appeal, the mother argues that the juvenile court erred in finding her in contempt for not allowing the father to exercise the make-up visitation ordered in the December 1, 2016, order. Specifically, the mother contends that the visitation schedule set out in the December 19, 2016, judgment made the December 1, 2016, order awarding the father make-up visitation "ambiguous due to the conflicting provisions regarding visitation."
We note that neither the parties nor the juvenile court distinguish between civil contempt and criminal contempt. In Pate v. Guy, 934 So.2d 1070, 1072 (Ala. Civ. App. 2005), this court discussed the difference between civil contempt and criminal contempt, writing:
"In general, civil contempt seeks to compel compliance with a juvenile court's judgment or order, while criminal contempt imposes punishment for failure to obey a judgment or order of the court.
*352 Rule 70A, Ala. R. Civ. P.; see also State v. Thomas, 550 So.2d 1067, 1072 (Ala. 1989). An essential element of a finding of criminal contempt is that such a finding is intended to punish the contemnor, while a finding of civil contempt seeks to compel future compliance with court orders. See generally Chestang v. Chestang, 769 So.2d 294 (Ala. 2000). Sanctions for criminal contempt are limited by statute to a maximum fine of $100 and imprisonment not to exceed five days. See Ala. Code 1975, § 12-11-30(5). On the other hand, sanctions for civil contempt may exceed those limits and may continue indefinitely until the contemnor performs as ordered.
"... In Chestang v. Chestang, supra, our Supreme Court reviewed the provisions of Rule 70(A), Ala. R. Civ. P., the rule that governs contempt in civil cases. The Supreme Court noted that Rule 70A(a)(2)(C) defines two types of criminal contempt: (1) misconduct that obstructs the administration of justice and (2) willful disobedience or resistance to a court order or judgment ' "where the dominant purpose of the finding of contempt is to punish the contemnor." ' Chestang, 769 So.2d at 297-98."
In Davenport v. Hood, 814 So.2d 268 (Ala. Civ. App. 2000), this court explained that
" '[t]he question of whether [an action involves] civil contempt or criminal contempt becomes important ... because a contemnor must be in a position to purge himself from the contempt. Mims v. Mims, 472 So.2d 1063 (Ala. Civ. App. 1985). In order to purge himself in a criminal contempt case, the contemnor must pay the fine imposed, serve the authorized time, or do both. Kalupa v. Kalupa, 527 So.2d 1313 (Ala. Civ. App. 1988). In order to purge himself in a civil contempt case, the contemnor must comply with the court's order. Rule 33.4(b), A[la]. R. Crim. P.' "
814 So.2d at 272-73 (quoting Hill v. Hill, 637 So.2d 1368, 1370 (Ala. Civ. App. 1994) ).
" ' "Absent an abuse of discretion, or unless the judgment of the juvenile court is unsupported by the evidence so as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the juvenile court." Shonkwiler v. Kriska, 780 So.2d 703, 706 (Ala. Civ. App. 2000) (citing Shellhouse v. Bentley, 690 So.2d 401 (Ala. Civ. App. 1997) ).'
" Carnes v. Carnes, 82 So.3d 704, 715 (Ala. Civ. App. 2011)."
Young v. Corrigan, 253 So. 3d 373, 380 (Ala. Civ. App. 2017).
Although the December 1, 2016, order was not included in the record on appeal, the parties and the juvenile court do not dispute that that order provided that, because of the mother's refusal to allow the father to exercise visitation and her 21 separate acts of contempt, the father was to have make-up visitation with the children during spring break 2017. Nonetheless, according to the mother's own testimony, she refused to allow the father to exercise that visitation, even after the father pointed out to her that the December 1, 2016, order specifically ordered her to allow him to visit with the children at that time. After refusing the father the right to visit with the children during spring break 2017, the mother allowed the children to visit New Orleans with their grandfather rather than spend the vacation time with them herself.
The mother's contention that the court-ordered make-up visitation was ambiguous in light of the schedule attached to the December 19, 2016, judgment is spurious.
*353 We note that, pursuant to the February 2013 judgment, the father was regularly scheduled to have visitation with the children over spring break in even-numbered years, for example 2016 and 2018. Thus, the father's scheduled spring-break visitation was the same under both the February 2013 judgment and the December 19, 2016, judgment. The mother's refusal to allow the father to exercise visitation during spring break 2017, telling him he had to wait until 2018, meant that the father would not receive visitation in addition to his regularly scheduled visitation. In other words, the mother's refusal deprived the father of his court-ordered make-up visitation. The mother admitted to the juvenile court that she did not refer to the December 1, 2016, order when she told the father he could not visit the children during spring break 2017. Finally, this court cannot review the December 1, 2016, order for internal ambiguity because that order is not included in the record on appeal. "An error asserted on appeal must be affirmatively demonstrated by the record, and if the record does not disclose the facts upon which the asserted error is based, such error may not be considered on appeal." Martin v. Martin, 656 So.2d 846, 848 (Ala. Civ. App. 1995). As the party claiming error, the mother carried the burden of ensuring that the record on appeal disclosed the facts upon which the alleged error was based. Perkins v. Perkins, 465 So.2d 414 (Ala. Civ. App. 1984).
Based on the record before us, we conclude that sufficient evidence supports the juvenile court's judgment finding that the mother wilfully, blatantly, and contemptuously refused to abide by the December 1, 2016, order and implementing her previous jail sentences. The July 13, 2017, judgment of contempt is not plainly and palpably wrong. Young, 253 So. 3d at 380
The mother also contends that the juvenile court erred in including in the July 13, 2017, judgment a warning that the mother "is afforded one more opportunity to demonstrate that she can abide by Court's Orders. Therefore, the court will not change custody at this time but is putting her on notice that her failure to abide by Court's Orders will result in her losing custody of the minor children." Because the juvenile court declined to modify custody based on current circumstances, there is no adverse ruling in this provision from which the mother can appeal. See Mobile Fuel Shipping, Inc. v. Scott, 375 So.2d 796, 797 (Ala. Civ. App. 1979) ("It is well settled that only an adverse ruling of the juvenile court is subject to an assignment of error and, consequently, reviewable on appeal."). The language of which the mother complains is an admonishment to the mother that the juvenile court will not tolerate future acts of interference with the father's court-ordered visitation with the children. The mother has cited no authority, and this court's research has revealed no authority, for the proposition that a juvenile court cannot include in its judgment language indicating that, if the mother persists in her contemptuous conduct, she risks losing custody of her children.
The mother has failed to demonstrate that the juvenile court erred or abused its discretion in finding her in contempt and ordering her to serve jail time, including that which previously had been suspended. Accordingly, the judgment is affirmed.
AFFIRMED.
Pittman, Thomas, and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.

We read the February 2013 judgment to mean that the mother was awarded sole physical custody subject to the father's visitation. See § 30-3-151, Ala. Code 1975.

The juvenile court executed the December 1, 2016, order on November 10, 2016, but that order was not entered until December 1, 2016.

The exhibit also contained "parenting clauses" regarding telephone access with the children, the exchange of addresses, access to school information, fostering respect for the other parent, and a number of similar provisions.