Rel: January 5, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

## CL-2022-1232

_____

## David Emory Gilbert

## v.

## Katherine Yates Gilbert

## Appeal from Morgan Circuit Court
## (DR-20-900394.01)

PER CURIAM.

David Emory Gilbert ("the former husband") appeals from a judgment entered by the Morgan Circuit Court ("the trial court") finding him in criminal contempt.

On April 22, 2021, the trial court entered a judgment divorcing the former husband and Katherine Yates Gilbert ("the former wife"). The divorce judgment provided in pertinent part:

> "This cause was called for trial on April 12, 2021. The parties appeared with their attorneys and announced a settlement agreement concerning the pending issues. The terms of the agreement were announced in open court and each party acknowledged the terms announced were, in fact, their agreement.
>
> "Upon consideration thereof, the court finds that the agreement of the parties is due to be and hereby is approved and due to be entered as an order of the court. …
>
> "….
>
> "4. The parties shall share the true joint legal and physical custody of the parties' minor child. …
>
> "….
>
> "[The former husband] shall directly pay [the former wife] child support in the amount of $300.00 per month on or before the first day of each month beginning June 12, 2021.
>
> "….
>
> "The parties currently reside in the same home. Therefore, the parties are not required to follow the custody/exchange schedule until June 12, 2021."

On May 27, 2021, the former wife filed a petition for an order finding the former husband in contempt of court.[1] In her petition, the former wife alleged in pertinent part that she and the former husband had agreed that she could reside at the former marital residence until June 12, 2021. She further alleged that the husband had changed the locks and that she could no longer access her personal possessions. She maintained that because of the former husband's conduct she had been forced to reside with her parents and to expend funds to replace items of necessity for her and the child. She asked the trial court to find the former husband in contempt, to order him to pay for child support for May 2021 and for the unexpected expenses that she had incurred because of his actions, and award her an attorney fee.

On June 25, 2021, the former husband filed an answer in which he admitted that on May 17, 2021, he had changed the locks on the former marital residence "due to [former wife's] destructive and inappropriate behavior in [the former marital residence.]"

---

[1]The former wife also asked the trial court to modify the divorce judgment. The former husband's appeal, however, does not challenge the trial court's judgment insofar as it modified the divorce judgment.

3

The hearing was conducted on September 28, 2021, and October 22, 2021. The following evidence was adduced regarding the former wife's claim of contempt. The former wife testified that she and the former husband had agreed in open court at the settlement hearing that she could reside at the former marital residence until June 12, 2021, and that because she and the child would be residing with the former husband at the former marital residence his child-support obligation would not begin until June 12, 2021. She admitted that the trial court had not included the agreed-upon provision that allowed her to reside at the former marital residence until June 12, 2021, in the divorce judgment.

The former wife testified that on Thursday, May 13, 2021, she "filed a warrant" containing allegations of harassment against the former husband. According to the former wife, after filing the warrant, she stayed at her mother's house for the weekend. When she returned to the former marital residence on Tuesday, May 18, 2021, her key would not unlock the door. She stated that she had sent the former husband a text message asking for access to the former marital residence so that she could get ready for work. According to the former wife, the former husband responded that she could no longer reside at or have access to

the former marital residence. He also informed her that if she wanted any property from the marital residence, she needed to make a list of the property and send the list to him, after which he would leave the requested property on the porch of the former marital residence. The former wife testified that she had repeatedly informed the former husband that she had not moved from the former marital residence and had repeatedly asked him for access to her personal property. The former wife admitted that on the evening of May 18, 2021, she retrieved a trash bag containing her personal possessions that the former husband had placed on the porch and that the former husband had allowed her that evening, accompanied by a law-enforcement officer, to enter the former marital residence and retrieve a few items.

According to the former wife, because the former husband had denied her access to the former marital residence and had refused to allow her to retrieve her personal possessions, she had had to purchase over $3,000 worth of personal items, including clothes, a hair dryer,

makeup, and toys for the children.[2]  She further testified that she had incurred an attorney fee pursuing this litigation.

The former husband testified that although he had agreed to allow the former wife to reside at the former marital residence until June 12, 2021, the former wife had damaged the former marital residence.  He explained that he had changed the locks of the former marital residence on May 17, 2021, to prevent her from accessing the house and damaging it further.  According to the former husband, when the former wife arrived at the former marital residence on the evening of May 18, 2021, she was "free to take whatever," and he did not prevent her from going through the house with a law-enforcement officer and removing her personal property.  He, admitted however,  that most of the former wife's possessions remained at the former marital residence. He further insisted that the former wife had always had access to her personal property because he had stored her property in the garage of the former martial residence and she had a garage opener.  The former wife disputed this testimony.

---

[2]The record indicates that the former wife had a child from a former marriage.

The former husband conceded that the divorce judgment provided that he did not have to pay child support until June 12, 2021, because he had agreed to allow the former wife to reside in the former marital residence until then. He admitted that because he had prevented the former wife from residing at and accessing the former marital residence, he owed the former wife child support for May 2021 and that she had incurred unanticipated expenses for her and the children the past few months.

The trial court, with the consent of the parties, reviewed the record of the April 12, 2021, settlement hearing and stated on the record:

> "I listened to [a recording of the settlement hearing], and the first thing on the recording stated that [the former wife] had 60 days [or until June 12, 2021,] to move from the [former marital residence], although I will note that was not included in [the divorce judgment] based on the agreement read allowed in court. So, everything else from that oral agreement made at the trial date of the divorce action, if I remember right, all of the rest of that appeared to be in [the divorce judgment.] Nonetheless, for purposes of the record in this case, I do find that that was part of the oral agreement of the parties."

On July 12, 2021, the trial court entered its final order. The trial court found, in pertinent part, that at the April 12, 2021, settlement hearing,

7

"[t]he parties agreed on the record that [the former wife] would have sixty (60) days from the date of that hearing to move from the [former] marital residence. That 60-day time period was representative of the time it would take for [the former wife's] oldest child to finish the school year. It is undisputed that [the divorce judgment] did not contain the provision and the same appears to be an oversight by the court in drafting [the divorce judgment]. Nonetheless, it is clear that the parties in fact agreed that [the former wife] would have sixty days to move from the former marital [residence] and the court orally affirmed the parties' agreement on the record. There was a clear meeting of the minds in this regard and the remainder of [the divorce judgment] supports the [former] wife's position."

The trial court found the former husband in criminal contempt for preventing the former wife access to the former marital residence and sentenced the former husband to 5 days in jail for each of the 26 separate acts of contempt that it found the former husband had committed. The trial court, however, suspended the sentence pending faithful compliance with the July 12, 2021, final order. The trial court also awarded the former wife $5,831.32, which consisted of her attorney fee for the prosecution of the case, funds for May 2021 child support, reimbursement for her unexpected expenses incurred due to the former husband's contemptuous conduct, and court costs.

On August 10, 2022, the former husband filed a postjudgment motion. In his motion, the former husband argued in pertinent part that

the trial court had acted outside its discretion by finding him in contempt. The husband maintained that because the divorce judgment did not include a provision allowing the former wife to reside at the former marital residence for 60 days from the date of the settlement hearing or until June 12, 2021, the evidence did not support the trial court's conclusion finding him in criminal contempt for violating the divorce judgment. He further argued that the imposed sanctions were excessive.

On November 8, 2022, the trial court conducted a hearing on the former husband's postjudgment motion. A copy of the transcript of that hearing is included in the record. That same day, after considering the parties' arguments, the trial court entered a detailed order. In its order, the trial court stated:

> "'[A]greements between parties to divorce actions are generally binding, and such agreements will not be set aside, "except for fraud, collusion, accident, surprise or some other ground of this nature."' Grantham v. Grantham, 656 So. 2d 900, 901 (Ala. Civ. App. 1995)(quoting Brocato v. Brocato, 332 So. 2d 722, 724 (Ala. 1976)). '[A]n agreement reached in settlement of litigation is as binding upon the parties as any other contract. … Furthermore, there is a strong policy of law favoring compromises and settlements of litigation, especially in cases involving families.' Tidwell v. Tidwell, 505 So. 2d 1236, 1237 (Ala. Civ. App. 1987). … Here, the parties reached an agreement in open court and recited on the record."

The trial court rejected the former husband's argument that it had acted outside its discretion by finding the former husband in criminal contempt for refusing to allow the former wife to reside at the former marital residence. The trial court, in evaluating the evidence and the contentions of the parties, specifically noted

> "that it was undisputed by [the former husband] that the pertinent part of the oral agreement was omitted by the court's [divorce judgment.] He affirmed the oral agreement in open court and he didn't deny that he knew his obligation thereunder. … Further, [the former husband] did not contend that he had any belief that he had a right to exclude [the former wife] from the [former marital residence.] Rather, he, in bad faith, rested on the fact that the pertinent part of the oral agreement had been omitted from the court's written order and excluded [the former wife] from the [former marital residence,] despite his agreement and the court's ratification and acceptance of the same."

Because it concluded that an attorney-fee award and reimbursement of the former wife's expenses that were incurred due to the former husband's conduct were not authorized as sanctions for criminal contempt, the trial court vacated that portion of the July 12, 2021, judgment. The trial court modified its criminal-contempt sanction by ordering the former husband to serve two days in jail for each of the 26 separate acts of contempt (for a total of 52 days) and to pay a fine in the amount of $1,300 ($50 for each of the 26 counts of contempt). The trial

court suspended the sentence for one year, provided that the former husband remained compliant with the trial court's orders. On December 9, 2022, the former husband filed a notice of appeal.

The former husband contends on appeal that the trial court acted outside its discretion by finding him in criminal contempt for violating the April 22, 2021, divorce judgment because that judgment did not expressly order him to permit the former wife to reside at the former marital residence until June 12, 2021.

In Mullins v. Sellers, 80 So. 3d 935, 942-43 (Ala. Civ. App. 2011), this court set forth the standard of review for a finding of criminal contempt:

> "'"In order to establish that a party is in criminal contempt of a court order, a contempt petitioner must prove beyond a reasonable doubt that the party against whom they are seeking a finding of contempt was subject to a '"lawful order of reasonable specificity,"' that the party violated that order, and that the party's violation of the order was willful. Ex parte Ferguson, 819 So. 2d 626, 629 (Ala. 2001)(quoting United States v. Turner, 812 F.2d 1552, 1563 (11th Cir. 1987))."'
>
> "Gladden [v. Gladden], 942 So. 2d [362] at 371 [(Ala. Civ. App. 2005)](quoting L.A. v. R.H., 929 So. 2d 1018, 1019 (Ala. Civ. App. 2005)). 'Furthermore, we have held that, "[a]bsent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly or palpably

wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court."' Preston v. Saab, 43 So. 3d 595, 599 (Ala. Civ. App. 2010)(quoting Shonkwiler v. Kriska, 780 So. 2d [703] at 706 [(Ala. Civ. App. 2000)])."

Additionally,

> "'whether a contempt in a civil case … is classified as criminal or civil, the purpose of a contempt proceeding is to provide a court with a method for compelling compliance with its orders or the orders of another judge and to punish those who willfully disobey or resist any such orders.'

"AltaPointe Health Sys., Inc. v. Davis, 90 So. 3d 139, 155 (Ala. 2012). A person cannot be held in contempt for failure to do something the court has not ordered. See Price v. McAllister, 537 So. 2d 43, 44 (Ala. Civ. App. 1988)."

Meadwestvaco Corp. v. Mitchell, 195 So. 3d 290, 294 (Ala. Civ. App. 2015).

"Unless the trial court enters a written order setting forth its approval of the settlement agreement, the settlement agreement is not part of a judgment rendered by the trial court." Ex parte Williams, [Ms. CL-2022-1055, Dec. 9, 2022] ___ So. 3d ___ (Ala. Civ. App. 2022). Here, the record indicates that although the trial court in open court approved the parties' settlement agreement which included a provision allowing the former wife to reside at the former marital residence until June 12,

12

2021, and the trial court stated in the April 12, 2021, divorce judgment that it approved the settlement agreement, the trial court did not include that provision in the divorce judgment. Because that provision was not expressly included in the divorce judgment, we cannot agree that the evidence supported the trial court's finding that the former husband violated a court order by refusing to allow the former wife to reside at the former marital residence until June 12, 2021. Therefore, the trial court acted outside its discretion by finding the former husband in criminal contempt and that portion of the trial court's judgment is reversed. See Preston v. Saab, 43 So. 3d 595 (Ala. Civ. App. 2010) (holding that mother could not be found guilty of criminal contempt for failing to allow telephone visitation between father and child because she had not been ordered to do so in divorce judgment); Powell v. Powell, 628 So. 2d 832 (Ala. Civ. App. 1993) (holding that former husband could not be held in contempt for failure to make payments set forth in special master's report because said payments were not ordered by the trial court); Lyman v. Jackson, 600 So. 2d 334, 336 (Ala. Civ. App. 1992) (recognizing that findings of contempt are based on refusal to comply with court orders); and Ex parte Moreland, 465 So. 2d 1163, 1165 (Ala. Civ. App. 1985)

("[T]he husband could not be held in contempt of court … for his failure to make <u>pendente lite</u> alimony payments because he was under no order of the trial court to pay them."). <u>See</u> <u>also</u> <u>Williams v. Williams</u>, 323 So. 3d 675, 680 (Ala. Civ. App. 2020) (Moore, J., concurring specially) (quoting 17 Am. Jur. 2d <u>Contempt</u> § 140 (2014) ("'A court's order sufficient to support the sanction of contempt for a violation should inform the person in certain, clear, and definite terms as to the duties thereby imposed or the actions required or forbidden. <u>The mandate alleged to be violated must be clearly expressed rather than implied.</u>'").

Accordingly, we reverse the trial court's judgment finding the former husband in criminal contempt because the April 22, 2021, divorce judgment did not expressly order him to permit the former wife to reside at the former marital residence until June 12, 2021. The cause is remanded for the entry of a judgment consistent with this opinion.

REVERSED AND REMANDED.

Thompson, P.J., and Edwards and Fridy, JJ., concur.

Hanson, J., concurs specially, with opinion.

Moore, J., concurs in the result, without opinion.

14

HANSON, Judge, concurring specially.

I concur in the main opinion. I write specially to note that although this court determined that the Morgan Circuit Court ("the trial court") acted outside its discretion by finding David Emory Gilbert ("the former husband") in criminal contempt, I believe that the trial court did not err by concluding that the former husband breached the parties' settlement agreement -- an issue that was tried by implied consent. See Rule 15(b), Ala. R. Civ. P. (providing that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings").

Section 34-3-21, Ala. Code 1975, states: "An attorney has authority to bind his or her client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." Section 34-3-21 "provide[s] that an oral settlement agreement is enforceable in Alabama only if it is made in open court or during a pretrial conference." Contractor Success Grp. v. Service Thrust Org. Inc., 681 So. 2d 212, 215 (Ala. Civ. App. 1996). A settlement agreement is a contract. Lem Harris Rainwater Fam. Tr. v. Rainwater, [Ms. 1210106, Sept. 30, 2022] ___ So. 3d ___ (Ala. 2022).

> "The elements that must be proven in a breach-of-contract action include the existence of a contract, a material breach of that contract by one party, and damage to the other party as a result of the breach. Sokol v. Bruno's, Inc., 527 So. 2d 1245, 1247-48 (Ala. 1988). 'A material breach [of a contract] is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract.' Id. at 1248."

Stockton v. CKPD Dev. Co., 936 So. 2d 1065, 1078 (Ala. Civ. App. 2005).

Here, I believe that ample evidence was presented to support the trial court's conclusion that the former husband breached the parties' settlement agreement. The parties entered into a settlement agreement in open court at the settlement hearing that included a provision that Katherine Yates Gilbert ("the former wife") could reside at the former marital residence until June 12, 2021. At that point, the agreement became as enforceable as any written agreement. See Ezell v. Childs, 497 So. 2d 496, 498 (Ala. Civ. App. 1985) ("In Alabama oral agreements entered in open court are as binding as written ones.). The former husband admitted that although he had agreed to permit the former wife to reside at the former marital residence until June 12, 2021, he had changed the locks on the doors on May 17, 2021, and had denied the former wife access to the residence from that day forward. The former wife testified that because she had been denied access to the former

16

marital residence, she had incurred unexpected expenses for necessities and an attorney fee. Therefore, in my opinion, the evidence supports the trial court's conclusion that the former husband breached the settlement agreement.